KOFOED, APPELLANT, v. BRAY, RESPONDENT.

(No. 5,311.)

(Submitted November 2, 1923. Decided November 22, 1923.)

[220 Pac. 532.]

*Specific Performance—Indefiniteness of Contract—Lack of Mutuality—Water Rights—Laches.*

Specific Performance—Contract Unenforceable for Indefiniteness and Lack of Mutuality.

1. A writing acknowledging receipt of a sum of money in part payment "for ranch of 200 acres [describing it by section, township and range], water rights of located 1869 and 1871. If not as I say and represent the money to be returned," intended by the parties as the basis for future negotiations and superseded by a formal deed executed a few days later, *held* incapable of specific performance because too indefinite and lacking in mutuality.

Same—Contracts—Must Comprise All Terms Intended to be Included.

2. An agreement to be finally settled must comprise all the terms which the parties intended to introduce, else it is unenforceable by specific performance.

Water Rights—May be Sold Separate and Apart from Land to Which Appurtenant.

3. A water right may be sold in connection with or separate and apart from the land to which it is appurtenant.

Same—Sale—Grantee of Land Takes Only Right Expressly Conveyed.

4. A water right appurtenant to land is conveyed in a grant of the realty unless reserved from the operation of the grant; but where the right intended to be conveyed with the land is stated in express terms, the grantee takes that only which is expressly conveyed, and does not take any additional right by implication, the grantor reserving that which is not conveyed.

Specific Performance—When Right of Action Barred by Laches.

5. Where a grantee of land at the time he made the purchase objected that the amount of water mentioned in the deed as going with the land was twenty-five inches less than he was entitled to, but upon being given the option of going ahead with the purchase or withdrawing, in which latter event an advance payment made by him would be returned to him, completed the transaction and thereafter for twelve years used the water right thus conveyed, and without objection permitted the grantor to make use of the twenty-five inches which he (the grantee) claimed to be entitled to, he was barred by his laches from maintaining an action for specific performance of an alleged agreement to convey the twenty-five inches in question, made prior to the execution of the deed.

---

3. What rights to use water for irrigation may pass by conveyance of land, see note in 65 L. R. A. 409.

*Appeal from District Court, Granite County; George B. Winston, Judge.*

Suit for specific performance by Hans Kofoed against John Bray. From the decree rendered plaintiff appeals. Affirmed.

*Mr. Wingfield L. Brown* and *Mr. R. Lewis Brown,* for Appellant, submitted a brief; the former argued the cause orally.

*Mr. W. E. Moore,* for Respondent, submitted a brief and argued the cause orally.

MR. CHIEF JUSTICE CALLAWAY delivered the opinion of the court.

This action is one for the specific performance of a contract for the sale of land and water rights. In the beginning the defendant and wife gave to plaintiff a writing which reads this way:

"Hall, Montana, October 23, 1909.

"Received from Hans A. Kofoed One Hundred & Fifty Dollars ($150.00) in part payment for ranch of 200 acres, on Section 31, Township 10, Range 13 W., water rights of located 1869 & 1871. If not as I say and represent the money to be returned.

"[Signed]    JOSEPHINE BRAY.
"JOHN BRAY."

Three days later the parties met at a law office in Philipsburg. There Josephine Bray executed a warranty deed purporting to convey to plaintiff the land mentioned in the writing of October 23, and "also fifty inches of waters of Willow Creek, miner's measure, appropriated May 15, 1869, and seventy-five inches of the waters of said Willow Creek, miner's inches, appropriated May 15, 1871, as described in a suit of *A. A. McDonald* v. *Ed Lannen et al.*"

At the same time Josephine Bray and plaintiff agreed in writing that the deed should be placed in escrow to be delivered to plaintiff when he should complete the payments provided for in the agreement. The reason defendant did not sign the escrow agreement and deed was that he then disclaimed any interest in the lands and water rights thereby affected, declaring the same to be the separate property of his wife. Before the transaction was completed on that day, October 26, the deed was read in the presence of Mr. and Mrs. Bray and the plaintiff.

Plaintiff objected to the amount of water stated in the deed, in respect to which he testified defendant said: "That was all the water he was going to allow me. Because he said he sold the land too cheap, anyhow. And if you don't want to take the fifty inches of 1869 water, we will give you the money back, he said." The following testimony given by plaintiff is illuminative: "Q. You say Mr. Bray said that while you were there? A. Yes, sir. Q. Did you then know how much water was in the deed—how much water it called for? A. Yes, sir. Q. From your recollection now, how much water did the deed call for? A. The deed called for 125 inches. Q. So now you say that Mr. Bray told you at that time that there was twenty-five inches of the water he wasn't going to give you? A.. Yes, sir. Q. Did Mrs. Bray say anything about it? A. Not at that time; no. She said Mr. Bray was 'doing the business for me. I don't know anything about it.' * * * Q. So you accepted the deed? A. With a protest; yes. Q. But you did know that it called for only fifty inches of the 69 right? A. Sure. Q. After that what did you do, if at any time, before the property was paid for about having that deed corrected? A. Why, I asked Mrs. Bray at different times to correct, and I also spoke to Mr. Bray about it."

By the agreement Mrs. Bray acknowledged the receipt of the first payment, $500. Other payments were to be made annually, the final one falling due in 1916. The deed and accompanying agreement were placed in escrow in the Drum-

mond State Bank by Mrs. Bray. Plaintiff did not see the deed again until he finished paying for the land although he could have seen it had he wished to do so. He said Mrs. Bray said she would "fix it up all right," and he presumed "that probably she did." Having performed all of the terms of the agreement of purchase plaintiff received the deed from the bank on or about January 1, 1917. Mrs. Bray died in 1918.

The court found that on or about March 1, 1910, with the consent of the Brays plaintiff entered into the possession of the premises and the 125 inches of water mentioned in the deed, and ever since he has been in the quiet and peaceable possession of the same.

As a matter of fact, when the deed and escrow agreement were made the defendant was the owner of 160 acres and his wife of forty acres of the 200 agreed to be conveyed, and defendant was the owner of the right to the use of seventy-five inches of the waters of Willow Creek as of date May 15, 1869, and seventy-five inches as of date May 15, 1871. When negotiations began between plaintiff and the Brays all the water was appurtenant to the land afterward agreed to be conveyed. Whether defendant knew the title to the land in question was in his name when the deed was made is not clear from the record but it may be inferred fairly that he did know it. However that may be, he admitted in his answer his obligation to convey the land to plaintiff, but asserted his contention that plaintiff is entitled to 100 inches of water only. Defendant testified: "I gave my wife permission to sell the land and a hundred inches of water."

As to the use of the water the fact is that with the knowledge of all concerned at all times after March 1, 1910, plaintiff used 125 inches of water, fifty inches of the 1869 right and seventy-five of the 1871 right, while defendant retained twenty-five inches of the 1869 right which he used upon other land belonging to himself, known as the Gird ranch, except

during one year when he permitted plaintiff to use the same, and that under lease, so defendant says.

On January 31, 1921, plaintiff borrowed money of defendant. To secure its payment he executed to defendant a mortgage conveying the 200 acres of land together with the water mentioned in the deed. About the month of July, 1921, plaintiff discovered for the first time that title to the water rights and to all of the land (except forty acres which had been in the name of Josephine Bray) was in the defendant. Plaintiff immediately demanded that defendant convey to him all the lands and water rights which he claimed were comprehended by the writing dated October 23, 1909. Defendant having refused to comply with the demand, plaintiff brought this suit.

By its decree the court ordered defendant to execute a deed conveying to plaintiff the 160 acres of land which Josephine Bray had attempted to convey, but which actually was in the name of her husband, and also the right to 125 inches of the waters of Willow Creek, fifty inches as of May 15, 1869, and seventy-five inches as of May 15, 1871. The court found that "Plaintiff had been guilty of laches in bringing this action and in asserting his rights, if any he had, to the said twenty-five inches of the waters of said Willow Creek as of date May 15, 1869, * * * and has, for more than twelve years, acquiesced in the use by the defendant of the twenty-five inches of the waters of said Willow Creek as of date May 15, 1869."

Plaintiff has appealed from the judgment, complaining because the court did not direct defendant to convey seventy-five inches instead of fifty inches as of May 15, 1869.

We think the court was fully justified in its finding of fact, conclusions of law and decree.

1. In the first place, the writing of October 23, standing alone, is not sufficient to warrant the remedy of specific performance. Among other deficiencies it is indefinite as to the terms of sale. It does not state a consideration to be paid,

nor the time and conditions of performance. The concluding sentence, "If not as I say and represent the money to be returned," certainly does not clarify the situation. We must assume that the sentence was placed in the agreement for some purpose, but discussion as to what the purpose was will not be useful here. "An agreement, the terms of which are not sufficiently certain to make the precise act which is to be done clearly ascertainable" cannot be specifically enforced. (Sec. 8720, subd. 6, Rev. Codes 1921.)

It is plain, too, that the agreement lacks mutuality. Generally speaking, when either of the parties to an obligation is entitled to a specific performance thereof the other party is entitled thereto. (Sec. 8715, Rev. Codes 1921.) By the provisions of section 8716, "neither party to any obligation can be compelled specifically to perform it, unless the other party thereto has performed, or is compellable specifically to perform, everything to which the former is entitled under the same obligation, either completely, or nearly so, together with full compensation for any want of entire performance."

Whether the deficiencies of the writing might be supplied by appropriate pleading and proof under the section last quoted need not now be considered for the reason that the writing was superseded by the acts of the parties three days after it was signed. Seemingly the writing was simply a basis for future negotiations. Certainly it was not a final [2] agreement between the parties. "An agreement to be finally settled must comprise all the terms which the parties intend to introduce." (*Long* v. *Needham*, 37 Mont. 408, 97 Pac. 731; *Monahan* v. *Allen*, 47 Mont. 75, 130 Pac. 768.)

What is said above is borne out by what the parties did. On October 26 they met for the purpose of concluding negotiations begun three days earlier. As to this there cannot be any question. The deed and agreement then executed and placed in escrow did away with the writing of October 23 in every particular. While defendant did not sign either the deed or agreement, he took part in what was done. He not

only acted as his wife's agent but went so far as to estop himself from denying that he was a trustee for the plaintiff as to the land and water rights mentioned in the deed (as he practically admitted in his answer respecting the land and 100 inches of water) and as the court held in effect when by its decree it ordered him to execute the deed.

2. The fact that all the water in the controversy was appur-
**[3, 4]** tenant to the land conveyed when the parties began negotiations is immaterial. A water right is not an inseparable appurtenance to land in Montana. It may be sold in connection with or separate and apart from the land. (*Middle Creek Ditch Co.* v. *Henry*, 15 Mont. 558, 39 Pac. 1054; Kinney on Irrigation, 2d ed., sec. 995.) It is true that a water right appurtenant to land is conveyed in a grant of the realty unless reserved from the operation of the grant. (*Sweetland* v. *Olsen*, 11 Mont. 27, 27 Pac. 339; *Sloan* v. *Clancy*, 19 Mont. 70, 47 Pac. 334; *Hays* v. *Buzard*, 31 Mont. 74, 77 Pac. 423; *Bullerdick* v. *Hermsmeyer*, 32 Mont. 541, 81 Pac. 334.) But, where the water right intended to be conveyed with the land is stated in express terms, the grantee takes that only which is expressly conveyed. He does not take any additional rights by implication. (Kinney on Irrigation, sec. 1006.) In such case the grantor reserves what he does not convey. The instant case is a good illustration of the rule. There cannot be any question as to what the grantor intended to convey, nor what the grantee knew he was to receive, by the very terms of the grant.

3. Assuming that plaintiff had cause for complaint when
**[5]** Josephine Bray included in the deed fifty instead of seventy-five inches of the 1869 water, still he is not now in a position to be heard. His protests are muffled by laches.

Before the negotiations were concluded on October 26 he heard the deed read. It confined him to fifty inches of the 1869 water right. At the time he was told that if he did not agree to that he could have his money back. He was given an option of going ahead with the purchase or declining

to proceed. He elected to proceed, made his first payment in full that day, later entered into possession of the lands, and, except for occasional verbal protests (made by him, he says, to a person now dead), used the 125 inches of water mentioned in the deed without question. He claims he thought that possibly Josephine Bray had changed the deed to include the twenty-five inches of water. Yet all the while defendant was using this disputed amount, claiming to own it, to plaintiff's knowledge. In 1917 plaintiff took the deed from escrow and immediately placed it on record. Josephine Bray was then living. In 1921 plaintiff mortgaged his land and the identical 125 inches of water mentioned in the deed to defendant. In February, 1922, this action was commenced. Plaintiff's counsel denounce defendant's conduct throughout the entire transaction in language plain and forcible. Whether or not their castigation of defendant is justified, it is manifest that vigorous language now does not excuse plaintiff's passivity during the long lapse of time following October 26, 1909, the date when he accepted, over his protest as he says, the deed executed to him by Josephine Bray.

Said this court in *Riley* v. *Blacker,* 51 Mont. 364, 152 Pac. 758, reiterated in *Elling* v. *Fine,* 53 Mont. 481, Ann. Cas. 1918C, 752, 164 Pac. 891: "Laches, considered as a bar independent of the statute of limitations, is a concept of equity; it means negligence in the assertion of a right; it is the practical application of the maxim, 'Equity aids only the vigilant'; and it exists when there has been unexplained delay of such duration or character as to render the enforcement of the asserted right inequitable. Therefore has it often been held by this court that: While a mere delay short of the period of the statute of limitations does not of itself raise the presumption of laches (*Wright* v. *Brooks,* 47 Mont. 99, 130 Pac. 968; *Parchen* v. *Chessman,* 49 Mont. 326, Ann. Cas. 1916A, 681, 142 Pac. 631, 146 Pac. 469; *Brundy* v. *Canby,* 50 Mont. 454, 148 Pac. 315), yet 'good faith and reasonable diligence only can call into activity the powers of a court of equity, and,

independently. of the period fixed by the statute of limitations, stale demands will not be entertained or relief granted to one who has slept upon his rights.' ''

The judgment is affirmed.

*Affirmed.*

ASSOCIATE JUSTICES COOPER, HOLLOWAY, GALEN and STARK concur.