MACLAY, Appellant, *v.* MISSOULA IRRIGATION DIS-TRICT et al., Respondents.

(No. 6,784.)

(Submitted September 11, 1931. Decided September 23, 1921.)

[3 Pac. (2d) 286.]

346

*Mr. E. E. Hershey* and *Mr. C. E. Comer*, for Appellant, submitted an original and a reply brief; *Mr. Hershey* argued the cause orally.

*Mr. L. L. Bulen* and *Messrs. Murphy & Whitlock*, for Respondents, submitted a brief; *Mr. John E. Corette, Jr.*, of Counsel, argued the cause orally.

MR. JUSTICE MATTHEWS delivered the opinion of the court.

By action filed April 7, 1927, Harry D. Maclay sought to recover damages suffered by reason of alleged wrongful de-

privation of water for irrigation of his crops in the month of July, 1923, and, by a second count, to enjoin the defendant district from interfering with his use of water from the "Miller-Kelley-Cave-Gannon Consolidated Ditch" on lands within the Fort Missoula Military Reserve held under lease, and from charging to him and collecting from him any portion of the cost of maintenance and operation of the irrigation district. In his complaint plaintiff joins numerous individuals, being the officers of the irrigation district, as defendants.

By answer the defendants denied the material allegations of the complaint, alleged certain statutes of limitations, and affirmatively pleaded that plaintiff is estopped from denying the right of the irrigation district to operate and administer the affairs of the ditch in question, and that plaintiff, during the period for which he claims damages, was taking water in excess of the amount to which he was entitled and using it upon lands outside the district, thereby depriving other owners of water to which they were rightfully entitled.

At the close of plaintiff's case the court granted a motion for nonsuit as to each of the individual defendants and, after submission of the cause, made findings against plaintiff and in favor of the irrigation district on all issues presented, and thereon judgment on the merits against plaintiff and in favor of the defendant district was duly entered.

Plaintiff has appealed from the judgment; he makes twelve assignments of error, general in their nature, which raise but the questions hereinafter discussed.

The record presents several novel problems in irrigation and water right law; it contains substantial evidence as to the following facts: Prior to 1902 numerous owners of arid land in the vicinity of the city of Missoula appropriated, in the usual manner, sufficient water from the Missoula River for their irrigation. These appropriators constructed a joint canal of sufficient capacity to carry the total amount of their several appropriations from the river to a point from which all could be served, and thereafter each diverted water from the main canal through an individual ditch, or a ditch serving two or

more water owners, as though diverting water from a natural stream. This system received various designations and finally became known as the "Miller-Kelley-Cave-Gannon Consolidated Ditch," the diversions from which were given the names of the owners but were finally designated as laterals to the main by letter; thus, by way of illustration: the "Garret Ditch," which figures prominently in this action, became "Lateral F." Certain of these laterals were again divided and the branches designated by figures, as for example, "Lateral H" and "Lateral H-1." It is reasonably clear that each water owner acquired a proprietary interest in this irrigation system up to the point at which he diverted his water, but had no interest therein below that point.

Prior to 1905 much of the land for which these appropriations were made was platted into additions to the city of Missoula and subdivisions of five-acre tracts known as "Orchard Homes," and with the sale of each lot or tract was conveyed water for its irrigation at the rate of one inch to the acre. In this manner the number of owners of water rights and interests in the irrigation system was increased to approximately 250.

In 1901 one Samuel Dinsmore appropriated 2,000 inches of the waters of the Missoula River for use upon certain designated lands through the irrigation system described and the following year conveyed certain of his holdings, with 500 inches of the water included in such appropriation, to the R. M. Cobban Realty Company. This land was platted and certain lots sold, and thereafter the realty company transferred the balance of its holdings, with 465 inches of water, to E. B. Weirick, trustee.

In 1905 Weirick and others commenced an action in the district court of Missoula county for the adjudication of the rights of all owners of rights in the waters carried through the canal and laterals, which action resulted in a consent decree fixing the rights of the numerous owners as of the date set opposite their names. Weirick was decreed 465 inches as of the date of the Dinsmore appropriation; others, holding

under original appropriations or transfers thereof, received like dating, while those holding title to the subdivided lots and tracts were accorded priority as of the date of their deeds. After disposing of all of the designated rights, the court declared: "Samuel Dinsmore is entitled to the balance of the water remaining in said ditch." This action is designated "Cause No. 2500."

In 1909 Weirick, trustee, conveyed numerous lots in the "R. M. Cobban Orchard Homes," together with 368 inches of the waters of the irrigation system and ditch rights to one Fred McDonald. This subdivision is in sections 29 and 32 of township 13 north of range 20 west. McDonald conveyed a portion of his holdings, with 150 inches of the water, to the "Car Line Company."

In 1920 plaintiff purchased from McDonald 20 inches of water without purchasing land to which it was appurtenant, and, in April, 1922, purchased in like manner 25 inches of water theretofore appurtenant to five lots in "Dinsmore's Orchard Homes No. 4." He also purchased lots 91 and 92 of the "Humble Orchard Homes," with 10 inches of water appurtenant thereto.

Each year subsequent to the entry of the decree above mentioned the district court appointed water commissioners, authorized to distribute the waters of the irrigation system in conformity to the decree in cause No. 2500, as though the decree dealt in its entirety with appropriations from a natural source, up to and including the year 1922.

For the years 1921, 1922, and 1923 plaintiff held lands in section 25, township 13 north of range 19 west and section 30 in township 13 north of range 20 west, being a part of the Fort Missoula Military Reserve, under lease from the War Department, and, in 1921 and 1922, used water from the irrigation system for their partial cultivation, with the consent of the water commissioner.

In 1922 the great majority of the owners of water rights and proportionate interests in the canal and laterals again attempting to apply statutory provisions enacted with reference

to natural streams, petitioned the court for the establishment of the defendant irrigation district. All owners, but plaintiff and some ten or twelve others, consented. All steps necessary for the creation of such district were regularly taken and the district was duly created and regularly organized. The decree establishing the district provides "that the operation, maintenance and complete administration of the Miller-Kelley-Cave-Gannon Consolidated Ditch, heretofore administered in the case of *Weirick et al.* v. *Marcia Finley,* Case No. 2500 of this court, is conferred upon said Missoula Irrigation District," and the order theretofore appointing a water commissioner under that decree was revoked.

The recitations in the decree, showing, as declared by the court, full compliance with the law respecting the creation of an irrigation district, contain the statement that the petition filed shows "the character of the works, water rights, canals and other property *to be acquired,* or constructed for irrigation purposes in the proposed district" as "those certain water rights, now belonging to and enjoyed by the lands contemplated to be irrigated by the appropriators and proprietors of the waters and systems of irrigation works of the Miller-Kelley-Cave-Gannon Consolidated Ditch," with the ditches, flumes, laterals, rights of way, etc. The property so described was never conveyed to nor acquired by the irrigation district in any manner; instead, as declared in the court's findings herein, the district discharged the functions of a water commissioner, or water commissioners, for the administration of the affairs of the irrigation system and the distribution of the water in conformity with the decree. In doing so it appointed a ditch walker or irrigation "boss," to whom it delegated authority to distribute the water.

In 1923 plaintiff secured an oral lease or license to use 100 inches of the waters of the "Car Line Company"; he then had 135 acres of the holdings of the Reserve in crops. Although all of the water under his control was theretofore, or was then, appurtenant to lands lying to the east and north of the Reserve and the bulk thereof was divertable through

"Lateral F," plaintiff, without the consent of the owners of "Laterals H and H–1" or of the officers or water distributor of the irrigation district, proceeded to divert the water, to which he deemed himself entitled, through the main canal extending beyond the headgate of Lateral F, to and through that of Laterals H and H–1.

Plaintiff took one ditch, carrying approximately 40 inches, from Lateral H, placed a dam in Lateral H–1, and diverted the remainder of his claimed water therefrom. These laterals are the portion of the system which supplies water to owners on the "Cobban and Dinsmore Addition No. 6," lying to the west of the Military Reserve and, to reach the point of intended use, cross the Reserve through that portion thereof included in plaintiff's lease.

The record contains substantial evidence to the effect that this diversion of water from Laterals H and H–1 deprived owners of tracts in the last-mentioned addition, entitled to the use of water through those laterals, of their water during the period plaintiff was so using water. Many of these owners complained to the water distributor, in July, 1923, and the distributor removed certain boards from plaintiff's dam, thus allowing a larger amount of water to flow down Lateral H–1, but the boards were replaced by plaintiff. On July 27, some nineteen or twenty of the aggrieved water owners proceeded to plaintiff's dam, there met the water distributor, and removed the dam entirely from the lateral. As the point was on the Reserve, plaintiff secured the services of soldiers to prevent further interference or disturbance, and thereupon the irrigation district closed the headgate of the lateral and placed guards over it. For three days plaintiff was without water, when an agreement was reached permitting him to use 100 inches of water for the remainder of the season. His alleged damage resulted from this deprivation of water for seventy-two hours.

1. Plaintiff's first contention is that the 100 inches of water leased to him is a portion of the Dinsmore appropriation of 2,000 inches for beneficial use upon lands which he asserts

"include section 30, T. 13 N. R. 19 W. and sec. 25, T. 13 N. R. 20 W.," portions of which are held by him under lease, and the water has never been severed from the land as appurtenant thereto. Plaintiff offered the original notice of appropriation in evidence; the offer was excluded, and he assigns error on its exclusion.

The fallacy of counsel's argument lies in the fact that the offered exhibit does not "include section 30 * * * and sec. 25" as asserted, but merely "certain lands in" those sections, together with other sections enumerated, and the record, and particularly a map of the district and the Reserve, shows that but portions of these sections are a part of the Reserve, while other legal subdivisions of the identical sections form parts of the Cobban and Dinsmore several additions, to which the water transferred by Dinsmore to the Cobban Realty Company and by it to Weirick are appurtenant. Further, the lands acquired, with water rights, by the Car Line Company, lie in section 29, township 13 north, range 19 west, which is also described in the offered notice of appropriation as containing land on which Dinsmore intended to use the water appropriated.

It is clear from the record that Dinsmore never had any interest in those legal subdivisions of sections 25 and 30, described, which lie within the Military Reserve. Plaintiff's water is a portion of that conveyed to Weirick, and, even if it had been shown that the residuary right granted Dinsmore in the decree of 1905 might, in part, be appurtenant to the land held by plaintiff under lease, such proof would be unavailing, as he had no interest in that residuary right; he did not lease water from the War Department, and it is sufficiently clear that the government had no water right for the leased land, at least no right through the irrigation system under consideration.

It is therefore manifest that the notice of appropriation offered tended to prove no issue in the case and was properly excluded.

2. Defense counsel contend that the waters acquired by plaintiff were specifically appurtenant to certain tracts and could not be used elsewhere, while plaintiff contends that certain of the conveyances of water rights, by deeds also conveying lands, do not render the water rights appurtenant to the lands.

The law on the subject of when water rights are appurtenant ▆▆▆ to land and on the right to effect a severance is well established in this state. A water right, legally acquired, is in the nature of an easement in gross, which, according to circumstances, may or may not be an easement annexed or attached to certain lands as an appurtenance thereto. (*Smith* v. *Denniff*, 24 Mont. 20, 81 Am. St. Rep. 408, 50 L. R. A. 741, 60 Pac. 398.) When a water right is acquired by appropriation and used for a beneficial and necessary purpose in connection with a given tract of land, it is an appurtenance thereto and, as such, passes with the conveyance of the land, unless expressly reserved from the grant. (*Lensing* v. *Day & Hansen Co.*, 67 Mont. 382, 215 Pac. 999.) This is so even though the grant does not specifically mention the water right. (*Yellowstone Valley ·Co.* v. *Associated Mortgage Investors*, 88 Mont. 73, 70 A. L. R. 1002, 290 Pac. 255.) Such a right may, however, be disposed of apart from the land to which it is appurtenant (*Lensing* v. *Day & Hansen Co.*, above), and may be reserved from a grant of the land (*Kofoed* v. *Bray*, 69 Mont. 78, 220 Pac. 532).

It is apparent, therefore, that the waters involved in this action were appurtenant to lands to the north, east, and west of the Military Reserve, and none thereof were appurtenant to lands within the Reserve; and it is further apparent that, as to the twenty inch right and the twenty-five inch right, acquired by plaintiff, there was a severance of the water rights from the lands to which they were appurtenant and they again assumed the nature of an easement in gross.

3. However, such severance and conveyance do not enlarge ▆▆▆ or extend the right (*Middle Creek Ditch Co.* v. *Henry*,

15 Mont. 558, 39 Pac. 1054; *Babcock* v. *Gregg*, 55 Mont. 317, 178 Pac. 284), and plaintiff by his purchase acquired the right to do only those things which the original owner of the water right could have done. As to the 100 inches, claimed under lease from the Car Line Company, the situation of plaintiff is no better.

Whether or not the owner of a water right, which merely ██ ▓ entitles him to the use of the designated amount of water when necessary for the cultivation of his lands and does not vest in him title to the *corpus* of the water, may rent such water for a season, during which he permits his land, otherwise requiring the full use of the water, to lie idle, in view of the provisions of section 7097, Revised Codes of 1921, is a question we need not here determine, but see discussion in *Allen* v. *Petrick*, 69 Mont. 373, 222 Pac. 451. This water is appurtenant to land to the east of the Reserve and is diverted through Lateral F; plaintiff's use thereof changes both the point of diversion and the place of intended use, but the temporary severance of the water from the lands of the owner, if it can be made at all, can no more enlarge or extend the right than can a conveyance of the water apart from the land to which it is appurtenant.

Plaintiff's dilemma, as to this phase of the case, has two horns. In the first place, the water was acquired from Weirick for use through the Garret ditch, or "Lateral F." In case No. 2500, Weirick, with the other plaintiffs, conceded, by an allegation of the complaint, "that each of said plaintiffs have no interest in said consolidated ditch, beyond the point where the waters are diverted from said main ditch by each of said plaintiffs, and no claim whatever to any interest in said ditch beyond such point or points, is made by plaintiffs." In the absence of any proof to the contrary, this admission shows that from the beginning the plan was that each of the joint owners of the irrigation system should own an interest in the main canal and the laterals only to such a point as was necessary for the conduct of his water to any of his land, and, as

the large tracts were subdivided, no subsequent owner acquired a greater right or easement.

Water rights and ditch rights are separate and distinct property rights; one may own a water right without a ditch right, or a ditch right without a water right. (*McDonnell* v. *Huffine*, 44 Mont. 411, 120 Pac. 792.) While, ordinarily, joint owners of a ditch are tenants in common, each entitled to its use (*Rodda* v. *Best*, 68 Mont. 205, 217 Pac. 669), under the facts of the present case, the joint ownership of the ditch in question extended only to the point of diversion of each owner's water. Thus all of the joint owners had an interest in the main canal down to the first lateral, and the number of owners in the ditch from there constantly decreased. The extent of the servitude of the entire ditch right acquired by Weirick is fixed and determined by his grant, by mesne conveyance, from Dinsmore and the decree in cause No. 2500 (sec. 6754, Rev. Codes 1921), and, on a division thereof, the burden of his dominant tenement was apportioned according to such subdivision and it could not in any way increase the burden upon the servient tenement. (Sec. 6755, Id.)

Plaintiff, therefore, in so far as the use of his water, severed from the land to which it was theretofore appurtenant whether by deed or lease, is concerned, had a water right without a ditch right and acquired no greater right than his grantor had. When he proceeded to take water through Laterals H and H–1, he usurped ditch rights in which he had no interest.

As to the other horn of the dilemma: A person entitled to the use of water may change the place of diversion, if others are not thereby injured, and, with like exception, he may change the place of use (sec. 7095, Rev. Codes 1921), and neither such change, or changes, nor the fact that the person making them does not own the land on which he uses the water, affect the right of appropriation (*Wheat* v. *Cameron*, 64 Mont. 494, 210 Pac. 761; *Thomas* v. *Ball*, 66 Mont. 161, 213 Pac. 597); but proof that either of such changes prejudices the rights of others entitled to the use of the water is fatal to the right to make such change (*Gassert* v. *Noyes*, 18 Mont.

216, 44 Pac. 959; *Head* v. *Hale,* 38 Mont. 302, 100 Pac. 222; *Carlson* v. *City of Helena,* 43 Mont. 1, 114 Pac. 110; *Lokowich* v. *City of Helena,* 46 Mont. 575, 129 Pac. 1063).

The evidence warrants the court's findings that plaintiff's diversion of the water from Laterals H and H–1, constructed and used for the irrigation of approximately 900 acres lying to the east and south of the Military Reserve, unjustly deprived other owners of water to which they were entitled, and, regardless of whether or not the irrigation district, defendant, had any interest or rights in the irrigation system, justifies the judgment of dismissal as to plaintiff's first alleged cause of action, i. e., for damages for loss of crops.

While officers of the district took some part in depriving plaintiff of water for the three days mentioned, those officers were owners of water rights, interested in the distribution throughout the system, and were either parties injured by the acts of plaintiff, or were acting in concert with aggrieved parties.

4. As to the second alleged cause of action, which is a suit for injunction: This action was not brought until 1927. The district was organized in 1923 by attempting to apply the existing statutory provisions to the situation of the owners of water rights distributed through their irrigation system. The legality of the establishment of the district and its legal existence are not questioned. It is but contended that, as it never took over the irrigation system and water rights, it has no interest in the "Miller-Kelley-Cave-Gannon Consolidated Ditch" and the water rights used therefrom and, therefore, is without authority to prevent plaintiff from taking the water outside the district, or assessing him for maintenance charges of the district.

The purpose of the petition of the owners, more than 100 in number, and taking their water from a common source and through a single intake, was, manifestly, to organize a public corporation for the purpose of having a central control body to perform the functions of water commissioners in the operation, maintenance, and management of the affairs of that

unwieldy body, and not to convey to the district the individual rights of the many owners interested. Whether or not this plan of operation is permissible under the then existing irrigation district laws, which must be given the most liberal construction (*In re Gallatin Irr. Dist.*, 48 Mont. 605, 140 Pac. 92), is a question not now of importance.

Prior to the commencement of this action the legislature enacted Chapter 100 of the Laws of 1925, providing for just such an irrigation district as was attempted to be formed, and declared that "any irrigation district which has been heretofore organized under procedure in substantial compliance with the provisions of this Act shall, upon the passage and approval of this Act, become a public corporation, with the privileges and powers hereby conferred, to the same extent as if such irrigation district were organized under the authority of this Act." (Sec. 9.) Without information on the subject it would seem that this `Act was passed as a curative measure for the benefit of the Missoula irrigation district; the requirements of the statute are so nearly parallel to what was done on the establishment of the district.

The constitutionality of the Act and the application of the provision quoted is not questioned. We, therefore, hold that the defendant district is a legally organized entity with power and authority to operate, maintain, and manage the affairs of the irrigation system described.

The question now arises as to whether or not such a district may prevent a water owner from using his water outside of the district.

As the district has power to administer the affairs of the district, it has a corresponding duty to protect the rights of all who are entitled to a distributive share in the waters of the system. Under laws similar to our own, California has held that a water owner cannot compel an irrigation district to distribute water to which he is entitled, to lands which he may own or operate outside the district; that, to sustain such a right would be to hold that each shareholder is the "absolute owner of the proportionate share of the water of the

district to which his land entitles him, to do with as he sees fit, even to the extent of diverting all thereof from the irrigation of lands within the district.'' The court declares that: ''It seems very clear that such a conclusion would be opposed to the whole plan or scheme of the legislation for irrigation districts, converting a district organized, acquiring and holding water solely for a certain specified purpose, viz., the procuring and furnishing of water for the improvement by irrigation of the lands included therein, into a mere agency for the distribution of its water to individuals for use by them outside the district for any purpose whatever.'' (*Jenison* v. *Redfield,* 149 Cal. 500, 87 Pac. 62, 63.)

In Idaho this flat declaration is qualified to the extent of holding that no such right exists when the water is needed for irrigation within the district. (*Yaden* v. *Irrigation Dist.,* 37 Idaho, 300, 216 Pac. 250.) In the Idaho case it is conceded that an irrigation district, taking over an irrigation system burdened with the duty to furnish water to a settler outside the district, thus clothing him with a vested right, is compelled to continue to furnish such water, but the fact that, in this case, plaintiff had, with the consent of a water commissioner, used water on the Military Reserve during two preceding years, is certainly not sufficient to clothe plaintiff with a vested right in the delivery of such water.

In the *Jenison Case,* above, it was held that the use of water outside the district for a period of five years or the period necessary to acquire a right by prescription did not entitle plaintiff to the continued delivery of such water outside the district, nor to recover damages for its withholding.

Certainly, a district with the power only to manage the affairs of the irrigation system, charged with the duty of equitably distributing the waters thereof to the numerous owners of lands and water rights within its borders, can neither consent to the taking, nor be compelled to distribute waters of the system for use on lands outside the district and to which they are not appurtenant, when such use deprives those having vested rights in the waters, of water to which

they are legally entitled, and when the use of the rights, used outside the district, would have no such effect if used upon the lands to which they are appurtenant.

The court did not err in dismissing the second alleged cause of action.

Judgment affirmed.

MR. CHIEF JUSTICE CALLAWAY and ASSOCIATE JUSTICES GALEN, FORD and ANGSTMAN concur.

Rehearing denied October 8, 1931.