SHERLOCK ET AL., RESPONDENTS, *v.* GREAVES ET AL., APPELLANTS.

(No. 7,737.)

(Submitted January 7, 1938. Decided February 4, 1938.).

[76 Pac. (2d) 87.]

208

*Messrs. Toomey, McFarland & Chapman,* for Appellants, submitted an original and a reply brief; *Mr. E. G. Toomey* and *Mr. John W. Chapman* argued the cause orally.

210

212

Mr. *Frank T. Hooks,* for Respondents, submitted an original and a supplemental brief, and argued the cause orally.

MR. JUSTICE ANDERSON delivered the opinion of the court.

The plaintiffs, as owners of rights in the waters of Crow Creek in Broadwater county, brought this action to enjoin the defendants, who are residents of the town of Radersburg, from diverting or using water diverted from this creek in alleged violation of the rights of plaintiffs. The plaintiffs use the water of Crow Creek for the production of various crops. The defendants have been using water from this creek for irrigating gardens, lawns, and for some domestic uses.

The trial court made findings and conclusions in favor of the plaintiffs and caused judgment to be entered enjoining defendants in accordance with the prayer of plaintiffs' complaint. The appeal is from the judgment. Various exceptions were taken to certain of the findings which were overruled by the trial court.

Commencing with about the year 1865, and for some succeeding years, various ditches were constructed for the purpose of diverting water from Crow Creek for use in placer mining operations in the vicinity and below the location of Radersburg. These ditches passed near the town, and its residents, with the consent of these various ditch owners, installed small boxes, flumes, and pipes in the ditches, thereby diverting water for the irrigation of lawns and gardens and also for some domestic uses. The residents of the town have either performed labor in repairing and cleaning the ditches or paid an annual charge to the ditch owners for the privilege of obtaining water from them. These practices have continued from the first settlement of Radersburg down to the commencement of this action. No water was supplied through these ditches to the town during the winter-time. The source of supply of water during the winter season for the townspeople consists of some ten wells located within the borders of the town. Various of these ditches were the source of supply of water to the people of Radersburg in the early years, but around the year 1900, or perhaps later, the water for the town was secured from a ditch known as the "Swede Ditch." Since that time water for the residents of the town has been obtained from this ditch, for which they have paid either in services or money to the owners of the ditch, who likewise own certain water rights in the waters of Crow Creek.

Some years after the commencement of the diversion of water by the residents of the town from the "Swede Ditch" an action was begun for the adjudication of the amount and priority of the rights of the users of water of Crow Creek, resulting in a decree dated May 27, 1907. The judgment was affirmed in some respects on appeal to this court (*Smith* v. *Duff*, 39 Mont. 374, 102 Pac. 981, 133 Am. St. Rep. 582), and reversed as to other rights (*Smith* v. *Duff*, 39 Mont. 382, 102 Pac. 984, 133 Am. St. Rep. 587). Upon the case being remanded, a new decree was entered as to certain of the rights on April 22, 1910. All of the parties plaintiff, or their predecessors in interest,

were parties to that action. None of the parties defendant in this action were parties to the case of *Smith* v. *Duff*.

By their complaint, plaintiffs asserted their rights in accordance with the decree in the above case. Defendants by their answer affirmatively alleged that they had rights paramount to those of plaintiffs upon five theories, namely: (1) Estoppel or irrevocable parol license; (2) adverse user; (3) that the conduct of the plaintiffs amounted to an executed parol contract to convey water rights; (4) appropriation of water; (5) that the conduct of the plaintiffs and their predecessors amounted to a dedication of their water rights to a public use, and therefore the plaintiffs are conducting a public utility.

The court found that the defendants were without right as against the plaintiffs to the use of the waters of Crow Creek, and any rights claimed by the defendants are asserted under and through predecessors in interest of the parties to the action of *Smith* v. *Duff,* supra.

Numerous errors are specified by the defendants, but they all relate to two general questions, namely: Was the decree in *Smith* v. *Duff* binding on the defendants? And, was the court in error in not finding for the defendants on one or more of their theories?

The decree in the case of *Smith* v. *Duff* was admissible in evidence in proof of the rights of plaintiffs, but was not conclusive upon the rights of defendants, since they were not parties to that action (*Wills* v. *Morris,* 100 Mont. 514, 50 Pac. (2d) 862), unless defendants are claiming under rights which were in fact adjudicated in the former action.

The judgment is not conclusive upon the theory that a judgment is conclusive as to all matters which might have been litigated. A judgment is conclusive as to all matters which might have been litigated under the issues raised by the pleadings, and as to any other issues actually litigated, although outside of those raised by the pleadings. (*Brennan* v. *Jones,* 101 Mont. 550, 55 Pac. (2d) 697, 702.) The decrees in the former case are a part of the record in this case, but none of the pleadings in that case are here. Hence, we may only

examine the judgment to determine its effect. The rights of the townspeople of Radersburg to use water was not there adjudicated, unless it appears that their claim is under some right or rights there the subject of judicial determination.

The evidence discloses that Crow Creek is a large stream in the high-water season, flowing from twenty to thirty thousand miner's inches. At the close of that season the flow rapidly diminishes to from six to eight hundred inches, and sometimes in dry seasons to much less. The high-water season ends usually around July 1st.

The present owners of "Swede Ditch," namely, Mrs. Phillip Mockel, William Kitto, and M. C. Smetters, are the owners of three rights adjudicated in the decree in the case of *Smith* v. *Duff*, as follows: 400 inches as of May 1, 1872; 1,000 inches as of May 1, 1874; 568 inches as of May 1, 1875. The people of Radersburg have made payment to these three owners, or their predecessors in interest, either in services or money, commencing before the institution of the case of *Smith* v. *Duff* and continuing down to the commencement of this action. The decree in the *Smith-Duff Case* provides as to the rights of these three plaintiffs that the water diverted under them is to be used for mining purposes and then returned to the channel of Crow Creek. These persons are among the parties plaintiff in this action. Many of the other parties plaintiff are the owners of rights of earlier priority than the owners of the "Swede Ditch." Some few of the plaintiffs are owners of rights subsequent in point of time to the rights of these owners of this ditch. At least in the more recent years the waters of Crow Creek have been distributed by the water commissioner appointed by the district court.

The thought pervades much of the argument on behalf of the defendants that all of the plaintiffs occupy a position, in the ownership of their rights to use the water of Crow Creek, closely akin to that of tenants in common. Persons who own separate rights to the use of the waters of a stream and which they apply to a beneficial use on their individual lands do not hold such rights in common with others owning separate rights

in the same stream. (*Cocanougher* v. *Montana Life Ins. Co.,* 103 Mont. 536, 64 Pac. (2d) 845.)

The defendants failed to establish an appropriation of water in that they offered no proof of the diversion of water by them ■ from Crow Creek. One of the essential elements of a completed appropriation is the diversion of water. (*Warren* v. *Senecal,* 71 Mont. 210, 228 Pac. 71; *Wheat* v. *Cameron,* 64 Mont. 494, 210 Pac. 761.) A subsequent appropriation of water is not any notice of an adverse claim. (*Moore* v. *Sherman,* 52 Mont. 542, 159 Pac. 966.)

Since the claim of the defendants, if any, to the waters of ■ Crow Creek is not made under an appropriation by them, any claim to the use of the water as against the plaintiffs, who are not the owners of the ''Swede Ditch,'' cannot be adverse to the rights of such plaintiffs. The defendants by their payments to the owners of that ditch recognize in those plaintiffs and their predecessors in interest a paramount right, and therefore there was no basis for a finding of adverse possession by the defendants. (*Northern Pac. Ry. Co.* v. *Cash,* 67 Mont. 585, 216 Pac. 782.)

We will now in the succeeding discussion divide the plaintiffs into two groups; that is, those who own no interest in the ''Swede Ditch'' and have accepted no payments from the water users in Radersburg, and those who have accepted payments and are the owners of this ditch.

We shall now consider the claims of defendants as against the first group of plaintiffs. Some of these plaintiffs knew that in dry years occasionally their rights were being invaded by the townspeople taking water at times when some of the plaintiffs had need of it. There was some remonstrance, at least occasionally, to this conduct. One time two residents of the town were arrested, taken before a justice of the peace, and fined for unlawfully taking water. Another time, a deputy sheriff was posted on the creek to prevent water being diverted for the use of Radersburg, although at whose instigation he was so placed there does not appear from the record. At best it can

only be said that plaintiffs did nothing more than acquiesce in the use of the water by the people of Radersburg.

To constitute an estoppel by silence or acquiescence, it must appear that the party to be estopped was bound in equity and good conscience to speak, and that the party claiming estoppel relied upon the acquiescence and was misled thereby to change his position to his prejudice. (*Mettler* v. *Rocky Mountain etc. Co.*, 68 Mont. 406, 219 Pac. 243.) Mere silence cannot work an estoppel. To be effective for this purpose, the person to be estopped must have had an intent to mislead or a willingness that another should be deceived; and the other must have been misled by the silence. (*Moore* v. *Sherman*, supra.) The evidence here fails to establish any misleading or willingness to mislead on the part of these plaintiffs; hence there can be no estoppel.

As against these plaintiffs, there is no common-law dedication. One of the essential elements of such a dedication is an offer on the part of the owner of property evincing his intention to dedicate. A mere permissive use of property does not prove an intention to dedicate. (*Maynard* v. *Bara*, 96 Mont. 302, 30 Pac. (2d) 93.) Since these plaintiffs are not tenants in common in the ownership of their rights with the ownership of the second group of plaintiffs, any contention, however sound, as to the rights of the defendants against the latter group, cannot prevail.

We pass now to the consideration of the rights, if any, of the defendants as against the second group of plaintiffs—the owners of the "Swede Ditch."

In *Brennan* v. *Jones,* supra, we stated certain fundamental rules with reference to water rights as follows:

"We are committed to the rule that the appropriator of a water right does not own the water, but has the ownership in its use only. (*Creek* v. *Bozeman Water Works Co.*, 15 Mont. 121, 38 Pac. 459; *Allen* v. *Petrick,* 69 Mont. 373, 222 Pac. 451; *Verwolf* v. *Low Line Irr. Co.*, 70 Mont. 570, 227 Pac. 68; *Tucker* v. *Missoula Light & Ry. Co.*, 77 Mont. 91, 250 Pac. 11; *Maclay* v. *Missoula Irr. Dist.*, 90 Mont. 344, 3 Pac. (2d) 286; *Rock Creek*

*Ditch & Flume Co.* v. *Miller,* 93 Mont. 248, 17 Pac. (2d) 1074, 89 A. L. R. 200.) Likewise it is settled by the decisions of this court that such a right is property which may be disposed of apart from the land on which it has been used. (*Smith* v. *Denniff,* 24 Mont. 20, 60 Pac. 398, 50 L. R. A. 737, 81 Am. St. Rep. 408; *Lensing* v. *Day & Hansen Security Co.,* 67 Mont. 382, 215 Pac. 999; *Maclay* v. *Missoula Irr. Dist.,* supra.)

"After an appropriator has used the water sufficiently to answer the purposes of his appropriation, he may not take the water of the stream remaining which he cannot use for such purposes and sell it to other parties so that it will deprive subsequent appropriators of their right to use the same. (*Galiger* v. *McNulty,* 80 Mont. 339, 260 Pac. 401; *Tucker* v. *Missoula Light & Ry. Co.,* supra; *Creek* v. *Bozeman Water Works Co.,* supra.)

"One who purchases the water right independent of the land to which it was theretofore appurtenant does not hereby enlarge or extend the right, and one who so purchases such a right is entitled to do only those things which the original owner of the water right might have done. (*Maclay* v. *Missoula Irr. Dist.,* supra; *Middle Creek Ditch Co.* v. *Henry,* 15 Mont. 558, 39 Pac. 1054; *Babcock* v. *Gregg,* 55 Mont. 317, 178 Pac. 284.)"

An appropriation of water may be made for purposes of sale or rental. (*Bailey* v. *Tintinger,* 45 Mont. 154, 122 Pac. 575; *Brennan* v. *Jones,* supra; see sec. 15, Art. III, Constitution.) The appropriation of this group of plaintiffs was for mining purposes, as evidenced by the decree in *Smith* v. *Duff.* The evidence discloses that at least on some occasions the water diverted under these rights was sold to miners for purposes of placer mining. It is clear from the record that the various owners of these rights have permitted the residents of the town of Radersburg to take water from their ditch for at least thirty-five years, and perhaps the people of the town have enjoyed for a longer period of time the privilege of using water under the same conditions from other ditches and diverted from Crow Creek under the same right.

In 1877 the legislature enacted the following sections of our Code, which have been carried forward through all the revisions of our Codes:

"7113. Any person having the right to use, sell, or dispose of water, and engage in using, selling, or disposing of the same, who has a surplus of water not used or sold, or any person having a surplus of water, and the right to sell and dispose of the same, is required, upon the payment or tender to the person entitled thereto of an amount equal to the usual and customary rates per inch, to convey and deliver to the person such surplus of unsold water, or so much thereof for which said payment or tender shall have been made, and shall continue so to convey and deliver the same weekly so long as said surplus of unused or unsold water exists and said payment or tender be made as aforesaid."

"7114. Any person desiring to avail himself of the provisions of the preceding section must, at his own cost and expense, construct or dig the necessary flumes or ditches to receive and convey the surplus water so desired by him, and pay or tender to the person having the right to the use, sale, or disposal thereof, an amount equal to the necessary cost and expense of tapping any gulch, stream, reservoir, ditch, flume, or aqueduct, and putting in gates, gauges, or other proper and necessary appliances usual and customary in such cases, and until the same shall be done, the delivery of the said surplus water shall not be required as provided in the preceding section."

"7115. Any person constructing the necessary ditches, aqueducts, or flumes, and making the payments or tenders hereinbefore provided, is entitled to the use of so much of the said surplus water as said ditches, flumes, or aqueducts have the capacity to carry, and for which payment or tender is made, and may institute and maintain any appropriate action at law or in equity for the enforcement of such right or recovery of damages arising from a failure to deliver or wrongful diversion of the same."

"7116. Nothing in the three preceding sections shall be so construed as to give the person acquiring the right to the use of water, as therein provided, the right to sell or dispose of the same after being so used by him, or prevent the original owner or proprietor from retaking, selling and disposing of the same in the usual and customary manner, after it is so used as aforesaid."

It was said in *Allen* v. *Petrick*, 69 Mont. 373, 222 Pac. 451, that these sections evidently had to do with water appropriated for sale, rental, or distribution. In the case of *Rock Creek Ditch & Flume Co.* v. *Miller*, 93 Mont. 248, 17 Pac. (2d) 1074, 1078, 89 A. L. R. 200, we said of these sections: "The rationale of the act is plain when we consider the history of the period which gave rise to the necessity for its enactment. Placer mining was still in vigorous operation in all the principal 'gulches' and in many of the lesser ones. It was impossible advantageously to move the auriferous gravels from their beds without the use of powerful heads of water. Most of the gulch channels did not produce a sufficient amount. The necessity for large bodies of water increased as the gravels became less productive. It was the practice from the earliest days to bring in bodies of water from adjacent streams for use in mining. Some of the necessary ditches and flumes were long and expensive. Companies were organized for the purpose of supplying water which they sold to placer miners at a certain rate per miner's inch. As an illustration, the first Legislative Assembly created James H. Febes and another, their associates or assigns, a body corporate by the name of the Rams Horn Ditch Company, authorizing the company to take water from Rams Horn Creek, and to convey it to Bivens Gulch, and thence to other mining districts 'as said water can be led and used to advantage.' The company was authorized 'to sell water to purchasers at the following rates: For the first use of water fifty cents per inch, and all other uses not to exceed twenty-five cents per inch per day.' (Bannack Laws, p. 553.)"

The record does not disclose whether the purpose of the appropriation of these plaintiffs, when made, was for sale or rental

of the water so appropriated. If these appropriations were not originally made for the purpose of sale, the owners of the rights certainly have changed their use to that purpose, which they may do if subsequent appropriators are not thereby injured. (Section 7095, Rev. Codes.)

All of the plaintiffs here have made common cause against all of the defendants and assert, not that the second group of plaintiffs have injured subsequent appropriators by this change of the use, if any, but that the defendants are without right to receive water from the creek, or from any of the plaintiffs. Since no one asserts that the plaintiffs were without right to sell water to the townspeople of Radersburg, we must presume that the law in that respect was obeyed. (Subd. 33, sec. 10606, Rev. Codes.) This second group of plaintiffs must be acting within the purview of section 7113, supra, to the extent that they might lawfully sell the water, for, if they were not so doing, they were violating the provisions of section 7097.

"Property does become clothed with a public interest when ▄▄▄▄ used in a manner to make it of public consequence, and affect the community at large." (*Munn* v. *Illinois,* 94 U. S. 113, 126, 24 L. Ed. 77.) It is the extent and character of the use which makes it public. (*Van Dyke* v. *Geary,* 244 U. S. 39, 37 Sup. Ct. 483, 61 L. Ed. 973.)

This second group of plaintiffs have devoted their property to supplying the people of the community in question with a prime necessity of life. The use to which this group of plaintiffs have applied their right under the statutes and Constitution is a public use. (*Van Dyke* v. *Geary,* supra; *Niday* v. *Barker,* 16 Idaho, 73, 101 Pac. 254; *State ex rel. Addy* v. *Department of Public Works,* 158 Wash. 462, 291 Pac. 346.)

Considerable argument is made that the plaintiffs are a public utility within the meaning of section 3881, Revised Codes, and therefore subject to the jurisdiction of the Public Service Commission. Property may be shown to have been devoted to a public use without regard to statutory provisions. (*Samuel Edwards Associates* v. *Railroad Com.,* 196 Cal. 62, 235 Pac. 647.) Some attempt has been made to enlist the powers of

this commission on behalf of the defendants, but we are advised that no action has been taken by that body on the application. We need not now pass upon the propriety of such application, for that body has not acted upon it and the commission is not a party here.

The defendants have not brought themselves within the provisions of section 7113 et seq., supra, in that the record is barren of any evidence establishing a tender within the meaning of those sections. The record showing lack of proof of this essential element necessary for relief thereunder, we need make no inquiry as to the existence of further deficiencies on their part.

The trial court correctly found the issues and entered a judgment enjoining the defendants in so far as the first group of plaintiffs is concerned, namely, those persons who owned rights of earlier priority than the earliest right of the plaintiffs Mrs. Phillip Mockel, William Kitto and M. C. Smetters, referred to in the record as owning the Matthew Jahr rights.

The trial court was in error in finding and entering a judgment enjoining the defendants as against the three plaintiffs last named in so far as the matter of the Jahr rights is concerned. Likewise no relief should be had as to any plaintiffs who own rights which are subsequent to the Matthew Jahr rights.

The cause is remanded to the district court of Broadwater county, with directions to the trial court to modify its finding and judgment in conformity with the views here expressed, and, when so modified, the judgment will stand affirmed. No costs shall be taxed on this appeal.

ASSOCIATE JUSTICES STEWART, MORRIS and ANGSTMAN concur.

MR. CHIEF JUSTICE SANDS, absent on account of illness, takes no part in the above decision.