MR. JUSTICES SHEEHY and WEBER
dissenting in part:
We agree with the resolution of the first issue by the majority, that Kunnemann impliedly reserved his Grannis water *201 right and conveyed no right to Franks or his successors to take irrigation water onto the deeded lands through the Grannis ditch as it runs through the nondeeded property retained by Kunnemann.
We disagree with the conclusion of the majority that approval of the Department of Natural Resources is necessary to effectuate the transfer by Kunnemann to Franks or that any right to Kunnemann to use the remaining water is “severed” and must have Department of Natural Resources approval.
A review of basic Montana water law is useful to demonstrate our position.
We begin with a reminder that a water right and a ditch right are separate entities, capable of separate ownership. Kunnemann can own a ditch right without a water right, or a water right without a ditch right. Maclay v. Missoula Irr. District (1931), 90 Mont. 344, 3 P.2d 286; Connolly v. Harrel (1936), 102 Mont. 295, 57 P.2d 781; McDonnell v. Huffine (1931), 44 Mont. 411, 120 P.2d 792. In this case, Kunnemann sold to Franks that part of the Grannis ditch that was part and parcel of the decided property. He reserved to himself the Grannis water right which provided water to that portion of the Grannis ditch. He had a perfect legal right to do so, since Kunnemann can own a water right without a ditch right.
Before the deed to Franks, Kunnemann, of course, owned all of the real property involved here. He owned a water right to 240 miner’s inches in the Grannis ditch and 450 miner’s inches in the McNiven ditch. The ditches on his lands were part and parcel of his ownership. The ditches were not “appurtenant” because they were part of the real estate that Kunnemann owned. This was explained in Smith v. Denniff (1900), 24 Mont. 21, 23, 24, 60 P. 398 as follows:
“2. Section 1078 of the Civil Code defines an ‘appurtenance’ as follows: ‘A thing is deemed to be incidental or appurtenant to land when it is by right used with the land for its benefit, as in the case of a way, or water course, or of a passage for light, air or heat from or across the land of another. A ‘water course from or across the land of another’ is an easement, and by *202 reference to section 1250 of the Civil Code it is plain that in the contemplation of the Code an appurtenance to land is in any and every case an easement. For example: A. owns a parcel of land, to irrigate which he has lawfully appropriated and by right is using, water. The ditch through which the water is conveyed is also owned by him, and is partly upon his land and partly upon the land of B. The water right is an appurtenant to A.’s land, and that part of the ditch which is upon B.’s land is an easement of A. therein, and is also appurtenant to the land of A., but that part of the ditch which is upon A.’s land is not appurtenant thereto, but is part and parcel of the land itself.”
Hence, it is clear that the portion of the Grannis ditch that lies upon the lands sold to Franks is not “appurtenant” to that land, but is part and parcel of the land conveyed, Franks received no ditch right in the Grannis ditch as an “appurtenance,” because Franks got no right to convey irrigation water over the remaining Kunnemann’s land through the Grannis ditch on that land. A ditch right on the land of another is an easement on the land of the other, and an easement cannot be created, granted or transferred except by operation of law, by an instrument in writing, by prescription or eminent domain.
The effect of the deed from Kunnemann to Franks was to convey to Franks 230 miner’s inches of water in the McNiven ditch, and the right to take water to the deeded lands through the McNiven ditch over the remaining Kunnemann lands. By the deed, Franks received 230 miner’s inches of McNiven water formerly owned by Kunnemann, and a McNiven ditch right over the remaining Kunnemann lands as an appurtenance to the lands purchased by Franks.
Castillo and Cotant are successors to a part of the rights deeded by Kunnemann to Franks. They have no other claim upon Kunnemann, or upon his remaining water or ditch rights. They cannot get water through the Grannis ditch unless they acquire (1) a water right which can be diverted at the Grannis diversion, and (2) an easement over Kunnemann’s remaining lands to carry the water through the Grannis ditch *203 over Kunnemann’s remaining lands to the lands owned by Cotant and Castillo.
A further result of the deed to Franks by Kunnemann is that Franks got that portion of the Grannis ditch which was located upon the deeded lands, but no water right because the Grannis water right was reserved to Kunnemann. When Castillo and Cotant claimed water through the Grannis ditch, they were claiming water for which neither they nor their predecessor Franks had a water right. See Maclay v. Missoula Irr. District, supra, for a reverse of this situation. Castillo and Cotant have no water right in the Grannis ditch which is appurtenant to the lands they now own.
Kunnemann owned “existing rights,” that is water and ditch rights which existed prior to July 1, 1973. We disagree that the owner of an existing right may not transfer a water or ditch right unless the Department of Natural Resources approves. In arriving at the opposite conclusion, the majority rely upon a portion of section 85-2-403, MCA, which we again quote for the reader’s convenience.
“(1) The right to use water under a permit or certificate of water right shall pass with a conveyance of the land or transfer by operation of law, unless specifically exempted therefrom. All transfers of interest and appropriation rights shall be without loss of priority.
“(2) The person receiving the appropriation interest shall file with the Department notice of the transfer on a form prescribed by the Department.
“(3) Without obtaining prior approval from the Department, an appropriator may not sever all or any part of an appropriation right...”
We contend that the foregoing statute applies only to water rights received under a permit or a certificate of authority. It was not intended to apply to existing rights, especially since existing rights were confirmed by 1972 Montana Constitution, Art. IX, § 3. The anomaly of the majority relying on section 85-2-403, MCA is that the majority hold in this case directly opposite to the provisions of section 85-2-403(1). Under that subsection no implied reservations are recognized. If that *204 subsection applied Kunnemann’s rights to water from the Grannis ditch would have passed by the deed to Franks because they were not “specifically exempted therefrom.”
We are buttressed in our contention that section 85-2-403 does not apply to existing rights because in the same part of the code, in section 85-2-401, MCA, it is provided that priority of appropriations for existing rights are to be determined by water courts.
Prior to July 1,1973, an owner of a water right could change the place of diversion, or place of use of his water right, except only to the extent he may injure others by such change. Section 89-803, R.C.M. 1947. These incidents of ownership of water rights were confirmed by 1972 Montana Constitution, Art. IX, § 3, or the constitutional provision has no meaning. The majority takes away these incidents unless the Department of Natural Resources gives approval. Not only has the majority misconceived the intent of the constitutional provision and the statutes adopted thereafter, but they have placed in doubt the rights of hundreds of water users in this state who have conveyed or received conveyances of existing rights since July 1, 1973. Such a result is not necessary here, especially since the process of adjudicating all water claims is now in full swing before the water courts, when and where all rights to the use and ownership of water will be determined.
Under our view of the law here, there is no conflict with the state constitution, and we need not discuss such an issue.
We would affirm the District Court in toto.