DYK et al., Appellants, *v.* BUELL LAND COMPANY et al., Respondents.

(No. 5,479.)

(Submitted May 20, 1924. Decided June 10, 1924.)

[227 Pac. 71.]

*Waters and Water Rights—Title by Prescription—Laches— Contracts—Rescission—Fraud—Mutual Irrigation Companies —Stockholders not Tenants in Common—Equity—Findings— When Conclusive.*

Mutual Irrigation Companies—Exchange of Water Rights for Stock— Rescission.
1.  Where holders of contracts executed by an irrigation company had surrendered them in exchange for stock in a mutual irrigation company, its successor, with knowledge that each share of stock did not represent any fixed or certain number of inches of water, that in dry seasons the available water was prorated among the holders, *etc.,* they were not entitled years after to rescind the contract of exchange on the ground of fraudulent representations made to them to induce them to enter into it; their failure to take prompt action to rescind and offer to restore the *status quo* barring their right to maintain the action

Water Rights—Title by Prescription—Laches.
2.  (Note: On the questions of laches and acquisition of title to water right by prescription, see paragraphs 1 to 5 in *Verwolf* v. *Low Line Irr. Co., post,* p. 570.) .

Same—Equity—When Findings Conclusive.
3.  In an equity case (water right suit) the findings of the trial court will not be disturbed on appeal if the evidence does not preponderate against them.

Mutual Irrigation Companies—Stockholders not Tenants in Common.
4.  Stockholders in a mutual irrigation company are not tenants in common, their relation to the company being one of contract; hence the contention that the company is but a trustee for the stockholders has no merit.

*Appeal from District Court, Gallatin County, in the Ninth Judicial District; W. H. Poorman, a Judge of the First District, presiding.*

Suit by J. S. Dyk and others against the H. S. Buell Land Company and the Low Line Irrigation Company and others. Decree for defendants and plaintiffs appeal. Affirmed.

*Messrs. Russell, Madeen & Clarke,* for Appellants, submitted a brief; *Mr. Charles A. Clarke* argued the cause orally.

When the H. S. Buell Land Company purchased and took over the irrigation system of the West Gallatin Irrigation Company it took the canals, water rights and irrigation system subject to and burdened with all its easements and servitudes, and the deed being of record and the canals and ditches being there, the purchaser from said Buell Land Company, the Low Line Irrigation Company, not only took the same with notice but with all the burdens imposed on the same by its predecessor. (*Telandar* v. *Tujunga Water & Power Co.,* 43 Cal. App. 492, 185 Pac. 505; *Gess* v. *Nampa Meridian Irr. Dist.,* 33 Idaho, 189, 192 Pac. 474.)

Sales of land with water and irrigation system in operation created an easement appurtenant to the land and a corresponding servitude on the whole system whereby party became entitled to demand water for irrigation and corporation became bound to supply it as long as source held out. (*Franscioni* v. *Soledad Land & Water Co.,* 170 Cal. 221, 149 Pac. 161; *Riverside Land Co.* v. *Jarvis,* 174 Cal. 316, 163 Pac. 54; *Smith* v. *Willis,* 84 Or. 270, 163 Pac. 810; *Bolles* v. *Pecos. Irr. Co.,* 23 N. M. 32, 167 Pac. 280; *Bartholomew* v. *Fayette Irr. Co.,* 31 Utah, 1, 120 Am. St. Rep. 912, 86 Pac. 481.)

The courts uniformly hold that the right to water must be treated as it has always been treated, as a right running with the land and as a corporeal privilege bestowed upon the occupier or appropriator of the soil, and as such has none of the characteristics of mere personalty. The right to the use of water for irrigation is appurtenant to the land and is real property. (*Henrici* v. *South Feather Land & Water Co.,* 177 Cal. 442, 170 Pac. 1135; *Stanislaus Water Co.* v. *Backman,* 152 Cal. 716, 15 L. R. A. (n. s.) 359, 93 Pac. 858–863; *Southern Pac. Co.* v. *Spring Valley Water Co.,* 173 Cal. 291, L. R. A. 1917E, 680, 159 Pac. 865; *Allen* v. *Railroad Com.,* 179 Cal. 68, 8 A. L. R. 249, 175 Pac. 466; *Dixon* v. *Dick,* 59 Colo. 583, 151

Pac. 441; *Gerber* v. *Nampa Meridian Irr. Dist.*, 16 Idaho, 1, 100 Pac. 80; *Niday* v. *Baker*, 16 Idaho, 73, 101 Pac. 254.)

Sales of water for irrigation can be made by an irrigation company only up to the capacity of the canal and water supply then available owned by it. A corporation acquiring an irrigation system may not oversell capacity of canal and water supply and thereupon require prior purchasers of water under contract with its predecessor to prorate their right with its stockholders. (*First Trust & Savings Bank* v. *Bitter Root Valley Irr. Co.*, 125 Fed. 320; *San Diego Land & Town Co.* v. *Sharpe-Mandel*, 89 Fed. 295, 97 Fed. 394, 38 C. C. A. 220; *State* v. *Twin Falls L. & W. Co.*, 30 Idaho, 41, 166 Pac. 220; *Gerber* v. *Nampa Meridian Irr. Dist.* (Or.), 116 Pac. 104; *Bent* v. *Second Extension Water Co.*, 51 Cal. App. 648, 197 Pac. 657; *Franscioni* v. *Soledad Land & Water Co.*, 170 Cal. 221, 149 Pac. 161; *Fenton* v. *Tri-State Land Co.*, 89 Neb. 479, 131 N. W. 1038; *Erp* v. *Raymond Canal & Mill Co.*, 105 Tex. 161, 146 S. W. 155; *Twin Falls Oakley L. & W. Co.* v. *Martin*, 271 Fed. 488; *Blakely* v. *Ft. Lyon Canal Co.*, 31 Colo. 224, 73 Pac. 249.)

*Mr. W. S. Hartman*, for Respondent Low Line Irrigation Company, and *Mr. George Y. Patten*, for the other Respondents, submitted a brief; *Mr. Patten* argued the cause orally.

Counsel for appellants cite a large number of cases to the proposition that sales of water for irrigation can be made by an irrigation company only up to the capacity of the canal and water supply then available owned by it. We have no doubt that an irrigation company engaged in selling water would be so limited, and that the right of one who had purchased a definite quantity of water, under a valid contract, could insist that subsequent sales in excess of the capacity of the canal should not prejudice his right. Nothing of the sort is involved in this case. The Low Line Irrigation Company owned so much water and issued so many shares of stock, and provided in its by-laws that each shareholder should have his *pro rata* share of what the company owned. The authorized

number of shares of stock has never been increased. All purchasers of such stock were presumed to know what they were getting, and must, as a matter of fact, have understood the situation. Again, the cases cited are based upon express contracts for the supply of water and statutes which are different from anything that we have in Montana.

Counsel next contend that by reason of their annual leases, which have long since expired, and their "old rights," which they have parted with, they acquired vested rights in the Low Line canal, which became appurtenant to their lands and were not affected by the subsequent sale of the canal to the H. S. Buell Land Company and then to the respondent Low Line Irrigation Company. It is evident that the question as to whether such lease privileges and "old rights" were, either of them, appurtenant to the appellants' lands cannot have any importance in view of the fact that the leases have expired and the "old rights" have been conveyed to the respondent Low Line Irrigation Company without any reservations of any kind.

Moreover, it is not necessary to go to other states for decisions on the question of when water rights are appurtenant to the land and when they are not, as that subject is fully discussed by our supreme court in the case of *Smith* v. *Denniff*, 24 Mont. 20, 81 Am. St. Rep. 408, 50 L. R. A. 741, 60 Pac. 398, where it is held that a water right when once appropriated includes and comprehends an easement; that this easement is in the nature of an easement in gross, which, according to circumstances, may or may not be annexed or attached to certain land as an appurtenance thereto; and that the question as to whether a water right is or is not appurtenant is to be determined by the circumstances in each case.

Furthermore, water rights represented by shares of stock are not usually considered appurtenant to the land. (40 Cyc., p. 833; *First National Bank of Longmont* v. *Hastings,* 7 Colo. App. 129, 42 Pac. 619; *Oligarchy Ditch Co.* v. *Farm Inv. Co.,*

40 Colo. 291, 88 Pac. 443; *George* v. *Robison,* 23 Utah, 79, 63 Pac. 819; 3 Farnham on Waters and Water Rights, p. 2001.)

MR. CHIEF JUSTICE CALLAWAY delivered the opinion of the court.

The plaintiffs, who are stockholders in the Low Line Irrigation Company, divert water for irrigating their lands from the Low Line canal south of the line dividing townships 1 north and 1 south, range 3 east, in Gallatin county. The point of diversion is referred to in the testimony as the Post place. The defendants, except the Low Line Irrigation Company, are stockholders in that company who take water from the canal north of, or below, the Post place. Other stockholders of the company take water from the canal above, while still others not parties to this action take their water below, the Post place.

The plaintiffs allege that they are entitled to priority over the defendants, and each of them, in the use and enjoyment of the waters mentioned in the complaint. They pray that "the defendants, their officers, agents and employees, be enjoined and restrained from interfering with plaintiffs' use and enjoyment" of the waters of plaintiffs mentioned in the complaint, and from prorating the same with the defendants, or either of them.

It will not be useful to set forth even an epitome of the substance of the pleadings. Incidental mention of some features of them will be made later. The plaintiffs' theory is that while they severally had the right to demand and receive water from the Low Line Company upon the basis of one inch of water to one share of stock the defendants oversold the capacity of the canal and then compelled the plaintiffs to receive water upon a *pro rata* basis with all other stockholders. The sufficiency of the complaint is attacked vigorously by the defendants; they have pleaded that there is a misjoinder of parties plaintiff, of parties defendant; that there is a defect of parties defendant; that causes of action are improperly united,

and so forth. The demurrer of the defendant High Line Canal Company was sustained and it was eliminated as a party. Demurrers of the other defendants were overruled. Separate answers were filed by the H. S. Buell Land Company and the Low Line Irrigation Company. The individual defendants answered jointly. The answers consist of denials and the assertion of affirmative defenses. The Buell Company and the individual defendants pleaded estoppel and laches as against the plaintiffs. The Low Line Company pleaded these and added prescription. Plaintiffs replied. In view of our conclusions upon the merits of the case, we shall not stop to discuss the pleadings.

The court made findings of fact and entered conclusions of law thereon in favor of the defendants. Decree followed accordingly. The plaintiffs appealed.

The controlling facts are that the West Gallatin Irrigation Company was organized in 1889 for the purpose of acquiring lands and water rights and selling and disposing of the same. In furtherance of one of its purposes it obtained title to several thousand acres of land. To provide water for irrigation and for sale, rental and distribution, the company in 1890 constructed what has since been known as the High Line canal which tapped the West Gallatin River on its west bank, running thence in a general northwesterly direction to near the town of Manhattan, a distance of about forty miles. To augment the flow of water in the lower end of this canal the company in 1901 constructed what was known as the Short Line canal, running from the river to a junction with the High Line. Later the Short Line and that part of the High Line below the junction became known as the High Line canal. It was the intention of the company from the beginning ultimately to irrigate substantially all of the lands which have been irrigated from these canals.

In the year 1909 the company sold its lands to the H. S. Buell Land Company, hereafter referred to as the land company. During that year the district court of Gallatin county, by a decree which determined the rights of the appropriators

of water of the West Gallatin River, awarded to the West Gallatin Irrigation Company 6,800 inches of water as of May 9, 1890, appropriated through the High Line canal, and 5,000 as of June 1, 1901, appropriated through the Low Line canal. Thereafter during 1909 the West Gallatin Irrigation Company sold to the land company all of its canals and water rights so decreed.

Shortly thereafter the owners of the land company incorporated the High Line Irrigation Company and the Low Line Irrigation Company, hereafter frequently referred to as the Low Line Company. To the Low Line Company the land company conveyed the Low Line canal with 3,400 inches of the 1890 water and 1,500 inches of the 1901 water; the High Line canal, and the remainder of the water it had purchased from the West Gallatin Irrigation Company, it conveyed to the High Line Irrigation Company. After the sale by the land company to the Low Line and High Line Irrigation Companies, each company separately controlled and operated its own property.

The West Gallatin Irrigation Company had sold to some persons the right to purchase water from its canals perpetually at the rate of $2 per inch, and to others by contracts executed annually it had leased water for use in the irrigating season, which was considered from June 1 to September 1, although some of the leases were for shorter periods of time. When the Low Line Company purchased the Low Line canal and water rights, as is told above, it agreed to complete and fulfill all contracts theretofore made and then in existence between the West Gallatin Irrigation Company and any and all users of water who by their contracts were entitled to water service by means of the Low Line canal. A few of the plaintiffs in this action formerly were owners of the so-called "perpetual rights" but most of them were merely lessees from year to year.

The capital stock of the Low Line Irrigation Company consists, and always has consisted, of 7,500 shares of stock of the par value of $20 each. This company was incorporated primarily for the purpose of acquiring the Low Line canal, its easements and appurtenances, to enlarge it, and to "lease, sell, convey, or

otherwise dispose of water rights and water privileges,   *  *  * for the irrigation of lands," *etc.*

It was the purpose of the Low Line Company to acquire 7,500 inches of water and to put that amount of water into the canal at the headgate. To make up this amount of water it appropriated 2,500 inches from the West Gallatin River and on July 3, 1914, a decree was entered by the district court awarding the Low Line Company that amount of water. Whether this right was or is of any especial value is of no consequence in this action, as will presently appear.

Here it is well to record the fact that at various times there had been trouble betwen the West Gallatin Irrigation Company and the water users because of insufficiency of water and the water users had brought numerous suits against the company on that account. There were many appropriations from the West Gallatin River prior in right to those owned by the West Gallatin Irrigation Company, and consequently as the water in the source of supply grew less that in the canals diminished.

After the Low Line Irrigation Company acquired the Low Line canal it expended over $70,000 in renovating this waterway. It put in concrete headgates at the intake at the Gallatin River, cleaned out and enlarged the canal throughout a great part of its length, and rebuilt flumes and pipes. However, practically all irrigation by means of the canal has been below what is known as the Yellow Dog siphon, and the inadequacy of this siphon is and has been the cause of trouble. Except for this the canal probably would have carried at all times the full amounts of water which the Low Line Company was entitled to divert from the river. The court found, and the finding is not challenged, that the canal "has not at the present time the capacity to carry as much as 7,500 inches of water, or more than 5,000 inches above the point where the delivery of water to its shareholders commences." As a matter of fact, the Yellow Dog siphon will not carry to exceed 4,500 inches of water, if it will carry that much. Shortage in the river during

irrigating seasons and the inadequacy of the Yellow Dog siphon may be considered the chief causes of this litigation.

It was the policy and practice of the West Gallatin Irrigation Company when there was not sufficient water in the canal to supply users in full to apportion the water available between them. The deeds whereby it conveyed the right to the use of water from its canals provided that, if for any reason the supply of water should be insufficient to supply the holders of rights to water then outstanding with the amount needed by them and which but for such insufficiency they would be entitled to receive from the company, it should have the right to distribute such water as should flow through the canal to the holders of such water rights *pro rata,* and for the purpose of so doing might establish and enforce such rules and regulations as it might deem necessary or expedient. Substantially the same provision was included in leases which the company gave to water users. This same policy was pursued by the Low Line Company. It is provided in its by-laws: "That in case there be from any cause less than the full amount of water belonging to the company in the canal, each stockholder shall, without complaint, accept his *pro rata* share of what there is, the same to be determined, and the headgate set accordingly, by the superintendent or his assistants."

Before the land company acquired the lands and water system of the West Gallatin Irrigation Company practically all the irrigation from the respective canals was done south of the Post place, although the first irrigation from the High Line, the original canal, was far north of that point, and in fact practically at the end of the canal, but that irrigation had not been continued. Just how much land was irrigated south of the Post place before 1910 does not appear, although counsel for plaintiffs contends the amount was approximately 4,000 acres; that matter is of no especial importance now.

It seems that 4,117 shares of stock were issued for use upon lands south, and 3,333 for use upon lands north, of the Post place. It also appears that the Low Line Company holds 752 shares to protect "old rights"—the rights of those who have

deeds or existing contracts executed by the West Gallatin Irrigation Company; these shares probably are for the irrigation of lands south of the Post place, and probably are included in the 4,117 shares above mentioned. But neither is this phase of the matter of importance in this lawsuit. But based upon these conditions counsel inquires: "Can the defendants oversell the carrying capacity of the canal and their water supply and thereupon compel prior users to prorate with them or their grantees?" Presuming a negative answer to this question is commanded, a pertinent inquiry arises, Who are the "prior users"? In passing we observe that when the individual defendants, as well as those stockholders who are not made parties purchased their stock does not appear. This too is unimportant for the reason that plaintiffs postulate their complaint upon the proposition that their rights rest upon conditions which obtained prior to the sale of the water system to the land company.

It is useless to discuss the "rights" of those who were merely lessees from the West Gallatin Irrigation Company by virtue of leases which were executed each year and expired each year. As to these the court concluded correctly that "such temporary use as was given by such leases absolutely terminated at the end of the period in each year for which such leases were given." The cases cited by plaintiffs to sustain their contentions as to the rights of these lessees are wholly inapposite to the conditions at bar. These cases arose under special constitutional or statutory provisions unlike any we have in Montana, or the facts were very different from those in this case.

Some of the plaintiffs in this action were the holders of contracts executed by the West Gallatin Irrigation Company which [1] provided that they should be entitled to water at $2 per inch in perpetuity. All of these contracts were surrendered by the plaintiffs in exchange for stock in the Low Line Irrigation Company. In their complaint the plaintiffs pleaded that they made this exchange because of fraudulent representations made to them and fraudulent inducements held out to them by agents of the land company. But the plaintiffs have not

sought damages on this account. Neither have they sought to show themselves entitled to rescind the contracts whereby they exchanged their rights in the old company for stock in the new. They knew the facts a long time ago, years ago. When they ascertained the facts, if they found themselves defrauded, it was their duty to have rescinded promptly and to have offered to restore the *status quo*. (Secs. 7565, 7567, Rev. Codes 1921; *Suburban Homes Co.* v. *North*, 50 Mont. 108, Ann. Cas. 1917C, 81, 145 Pac. 2; *Smith* v. *Christe*, 60 Mont. 604, 210 Pac. 1011.) They did nothing of the sort.

The court found, and the evidence does not preponderate [2] against the finding, that one share of the capital stock of the defendant Low Line Irrigation Company represents, and always represented, $1/_{7500}$ part of the water flowing in the Low Line canal; and a share does not, and never did, represent any fixed or certain number of inches of water which the Low Line Company is or has been obligated to deliver. Other findings determined: (a) That at the time when each of the plaintiffs acquired capital stock of the Low Line Company either by purchase or exchange, he did so with knowledge that each share of the capital stock of the company represented and would entitle him to the use of $1/_{7500}$ part of the water which might from time to time be flowing in the Low Line canal, and no more; (b) that at the time when each of the plaintiffs acquired capital stock of the company either by purchase or exchange, he did so without either asking for or receiving any promise or agreement that he should have a greater right than any other stockholder in the company; (c) that at the time when each of the plaintiffs acquired capital stock of the company either by purchase or exchange he did so without any understanding, promise or agreement as to whether any of the capital stock of the company was to be sold for use upon lands lying north of the Post place, and without any promise or agreement on that subject at all, and without reserving any right or privilege which he might have had or claimed to obtain or receive water from the Low Line Canal because of any deed or lease from the West Gallatin Irrigation Company or otherwise; (d) that

since about November 1, 1909, all of the persons who have received water from the Low Line canal have received it as stockholders of the Low Line Company, or upon the presentation of shares of the capital stock of that company, and all the water delivered to users from the canal since that date has been upon presentation of shares of capital stock in the Low Line Company and not otherwise; (e) that since November 1, 1909 (or since the dates respectively when the plaintiffs acquired stock in the Low Line Company), the plaintiffs with knowledge of the facts and without claim of any superior or greater rights to the use of water from the Low Line canal have had the water delivered to them only on presentation of their respective shares of stock to the officers of the company, and the water has been cut and prorated in accordance with the by-laws of the Low Line Company and the flow of water in the canal, and they, or either of them, have not claimed nor exercised any superior or greater rights to the use of the water in said canal than the defendants to this action and the other stockholders of the company; (f) that since the incorporation of the Low Line Company all of the capital stock of the company has been sold to the owners of lots lying under and irrigable from the canal; that such stockholders have made valuable improvements on their lands and have expended money for the construction and maintenance of irrigating ditches and laterals for the irrigation of their lands; and that if the plaintiffs were now granted rights to the use of water from the West Gallatin River through the canal superior and prior to the rights of the individual defendants who are owners of shares of stock of the company, and superior and prior to the rights of other stockholders who are not parties to this action, the shares of the capital stock of the defendants and other owners of shares of capital stock of the company not parties to the action would be greatly depreciated in value.

The court also made an appropriate finding in favor of the defendant Low Line Company upon the subject of prescription. A careful consideration of the evidence in the case warrants [3] us in saying that the evidence does not preponderate

against these findings, and pursuant to the well-known rule they will not be disturbed. (*Allen* v. *Petrick*, 69 Mont. 373, 222 Pac. 451.) As a result of the findings the court concluded that the only rights which the plaintiffs, or either of them, have to the use of the water from the Low Line canal is by virtue of their ownership of capital stock in the Low Line Company: no one of the plaintiffs had the right to demand any specific quantity of water—only that which his shares entitled him to receive; that when the plaintiffs, or their respective predecessors in interest, acquired stock in that company either by purchase or exchange they waived any and all rights or claims which they may have had to the use of water by virtue of any previous deed or lease from the West Gallatin Irrigation Company or otherwise; that the plaintiffs, and each of them, have been guilty of laches and by reason thereof they cannot now assert or claim any right to the use of water through the Low Line canal superior to the title of the Low Line Company or to the rights of any of the other defendants herein; and that the Low Line Company has title to the Low Line canal and all of the water rights and appurtenances mentioned in the findings of fact by reason of adverse possession and user, which is superior to the rights or claims of the plaintiffs, except that the plaintiffs have the right to receive from the canal the *pro rata* share of water flowing therein to which they are entitled as owners of shares of the capital stock of the Low Line Company.

Respecting laches and prescription, what is said in *Verwolf* v. *Low Line Irr. Co., post,* p. 570, 227 Pac. 68, is directly applicable to the instant case, and need not be repeated here.

The assertion of counsel for plaintiffs that the Low Line Company is but "a trustee for those it serves who own the [4] equitable title," that is, its stockholders, is directly contrary to the holding of the court in *Hyink* v. *Low Line Irr. Co.* 62 Mont. 401, 205 Pac. 236, in which it was held that the stockholders in a mutual irrigation company are not tenants in common but that their relation to the company is one of contract.

Whatever may be the rule as to the rights of a prior purchaser of the capital stock of an irrigation company which

after his purchase has oversold the capacity of its water supply, these plaintiffs are not in a position to avail themselves of it.

Upon the facts presented in the record the judgment of the court was right, and it is affirmed.

*Affirmed.*

ASSOCIATE JUSTICES COOPER, HOLLOWAY, GALEN and STARK concur.