**ACKROYD v. WINSTON BROS. CO.**

**BRADY IRR. CO. v. SAME.**

No. 9251.

Circuit Court of Appeals, Ninth Circuit.

July 17, 1940.

Rehearing Denied Sept. 16, 1940.

HANEY, Circuit Judge dissenting.

———◆———

Sterling M. Wood, Robert E. Cooke, and Fredric Moulton, all of Billings, Mont., for appellants Ackroyd, Brigham, LaCroix, Carter, Stevens and Nelson.

Church & Jardine, J. W. Freeman, J. P. Freeman, and Ernest Abel, all of Great Falls, Mont., for appellant Brady Irr. Co.

R. H. Glover, S. B. Chase, Jr., and John D. Stephenson, all of Great Falls, Mont., for appellee.

Before GARRECHT, HANEY, and STEPHENS, Circuit Judges.

STEPHENS, Circuit Judge.

Appeals from an order of the District Court of the United States for the District of Montana, Ackroyd v. Brady Irr. Co., D. C., 27 F.Supp. 503, dismissing a complaint and a complaint in intervention seeking declaratory judgments, 28 U.S.C.A. 400. The appeals were consolidated.

For an understanding of the problems presented to us we narrate the following alleged facts. The right to gather and impound water from a certain run-off in Montana was secured by a private non-profit corporation called Teton Co-operative Reservoir Company. This company's corporate structure consists of 1,000 shares of stock and it is provided by its by-laws that each share shall be entitled to take 1/1000 part of the water available for distribution. Sometime after its organization and after it had constructed a reservoir, ditches, etc., certain territory below the reservoir was organized under the laws of Montana as an irrigation district and it was called Bynum Irrigation District. This district looked to the Teton Reservoir for its supply of water and proceeded toward securing the same through the medium of share purchases of Teton Co-operative Reservoir Company stock. It proposed to issue $1,000,000 in bonds and proceeded toward consummation of the purchase of 804 shares of Teton Co-operative Reservoir Company stock. A landowner in the district protested and brought suit[1] to enjoin such proposed action, but the courts declared the legality of the same and the purchase was consummated. Ever since July 23, 1927, Teton Co-operative Reservoir Company has delivered at its headgate to the Bynum Irrigation District out of its reservoir 804/1000 of the water diverted to and stored in said reservoir.

The Brady Irrigation Company is a private co-operative non-profit corporation and has been the owner of 156 shares of Teton Co-operative Reservoir Company stock at all times of moment to this case. Other persons own the remaining 40 shares of stock of Teton Co-operative Reservoir Company. There appear in the case certain individual non-residents of Montana by the names of James Ackroyd, Dwight S. Brigham, Morris F. LaCroix, Earle L. Carter, J. Edward Stevens and Frank E. Nelson, who own outstanding bonds of the Bynum Irrigation District. They are intervenors-appellants, and for convenience they will generally be referred to as "Ackroyd et al". Other parties in the case will be referred to under abbreviated names as follows: Winston Brothers Company, defendant-appellee, as Winston Co.; Brady Irrigation Company, plaintiff-appellant, as Brady Co.; Teton Co-operative Reservoir Company, defendant, as Reservoir Co.; Bynum Irrigation District, defendant, as Bynum District. C. K. Malone, an intervenor, is not a party to this appeal.

The Reservoir Co. plant was deemed insufficient for the needs of the shareholders, and after the purchase of the large block of stock by Bynum District the Reservoir Co. contracted with Winston Co., a Minnesota

[1] Thaanum v. Bynum Irrigation District, 72 Mont. 221, 232 P. 528.

corporation, for the enlargement of the reservoir together with other work on its plant. The contractors have not been paid in full and have secured a judgment for the unpaid balance with interest. They claim the right to have this judgment satisfied through execution on the physical properties of their judgment debtor, the Reservoir Co. It is alleged in the complaint that "* * * when the agreement for said construction work was made by and between said Winston Bros. Company and said Teton Co-operative Reservoir Company, and while said construction work was being done, the said Winston Bros., and its officers, knew that the by-laws of said Teton Cooperative Reservoir Company provided that each share of the capital stock of said company entitled the holder thereof, to the use, during the irrigating season of each year, of a one-thousandth part of the waters, water rights and irrigating facilities and systems of said reservoir company, including the right to lease, pledge, sell and dispose of such use, and when said contract was made, and while said contruction work was being performed by said Winston Bros. Company, the said Winston Bros. Company and its officers, knew that all of said lands, reservoir sites, premises and property on which said reservoir was located, were necessary to hold the water necessary to irrigate the lands and premises of said Bynum Irrigation District and the land of the stockholders of said plaintiff corporation and others; that said construction work was done and accomplished thru the ownership by said Irrigation District of 804 shares out of 1000 shares of said Reservoir Company, all of which was known to said Winston Bros. Company who then and there had full knowledge of the by-law mentioned * * *".

The by-law referred to was the one hereinbefore mentioned.

Brady Co., fearing injury to its right to water as a shareholder in Reservoir Co. through execution under the Winston Co. judgment, started this litigation by filing its complaint in the District Court for a declaration of the rights of the parties.

Ackroyd et al., fearing that the proposed execution would affect them as holders of Bynum District bonds, demanded that Bynum District and Reservoir Co. appear and defend their interests. This they did not do, and for that reason Ackroyd et al. sought and secured permission to intervene, and they filed their complaint for a declaratory judgment making Bynum District and Reservoir Co. defendants. Bynum District appears to be insolvent although functioning and by right through its ownership of a great majority of Reservoir Co. shares, is actively in control of Reservoir Co. and dominates and directs its actions.

It is apparent that if the reservoir properties are put upon public sale, both Brady Co. and Bynum District will be very materially affected. Motions to dismiss having been granted, the plaintiff Brady Co. and intervenors Ackroyd et al. appeal.

The statutory provisions respecting exemptions from liens in Montana are found in Secs. 9427 to 9430, 4 R.C.M. 1935, and there seems to be no specific exemption for the type of property involved here. However, since the lien is claimed under the general lien law, it is necessary to ascertain whether or not this general law will apply to the property of the Reservoir Co. It is claimed by appellants that such property is performing a public use and therefore is exempt from sale to satisfy the judgment.

Here we find a corporation possessing a supply of water, which under its management has been furnishing water from such supply to all landholders within in a duly authorized district, organized under state law, through the medium of stock ownership. This ownership by virtue of its heavy majority of all shares has had the result of virtually transferring the government of the Reservoir Co. to that of the governmental agency, Bynum District. If because of this public use and control the laws of Montana protect public agencies from interferences by lien process, every reason for such protection appears present in this case. The service performed by the Reservoir Co. through Bynum to Bynum's landholders is a public service of the highest order and amounts to a dedication of the necessary facilities used to supply such service as a public use. See Cal.Pac.Digest, Waters and Water Courses, ☞217, also 8 A.L.R. 268 and 15 A.L.R. 1227. Compare Stratton v. R. R. Comm., 1921, 186 Cal. 119, 198 P. 1051, and Western Canal Co. v. R. R. Comm., 1932, 216 Cal. 639, 15 P.2d 853. In the case of Whiteside v. School Dist. No. 5 et al., 20 Mont. 44, 49 P. 445, 446, a mechanic's lien was sought to be enforced against a public

660

school house. The enforcement was not allowed. In the course of the opinion the court say, "Most of the decisions base their reasoning upon the ground of public policy, and point out that it is easy to see what detriment might follow if lands and buildings held for public uses —as, for instance, common schools—could be sold to satisfy the debts or defaults of municipal corporations having the legal title."

The court quote from Mayrhofer v. Board of Education, 89 Cal. 110, 26 P. 646, 23 Am.St.Rep. 451, " 'The state is not bound by general words in a statute which would operate to trench upon its sovereign rights injuriously affecting its capacity to perform its functions or establish a right of action against it.' "

█ The case of Sherlock v. Greaves, 106 Mont. 206, 76 P.2d 87, 93, adheres to such principles. Therein water flowing down a ditch had been allowed to be used for the general supply of a community. We quote from the opinion,

" 'Property does become clothed with a public interest when used in a manner to make it of public consequence, and affect the community at large.' Munn v. Illinois, 94 U.S. 113, 126, 24 L.Ed. 77. It is the extent and character of the use which makes it public. Van Dyke v. Geary, 244 U.S. 39, 37 S.Ct. 483, 61 L.Ed. 973.

"This second group of plaintiffs have devoted their property to supplying the people of the community in question with a prime necessity of life. The use to which this group of plaintiffs have applied their right under the statutes and Constitution is a public use. Van Dyke v. Geary, supra; Niday v. Barker, 16 Idaho 73, 101 P. 254; State ex rel. Addy v. Department of Public Works, 158 Wash. 462, 291 P. 346."

Cases in accord are collected in a note in 26 A.L.R. 326, wherein it is stated that the view is nearly universal. The case of Pittsburg Equitable Meter Co. v. Cary, 10 Cir., 67 F.2d 65, on page 66, expresses the general rule as follows: "The general rule in a transaction of this character is fairly stated in 40 C.J. 60, in the following language: 'As a rule the property of a quasi-public corporation, which is affected with a public use, is not subject to a mechanic's lien. Thus it is held that a mechanic's lien cannot be acquired or enforced against the property of railroad, street railway, or waterworks companies.

A mechanic's lien may, however, be enforced against property of a quasi-public corporation which is not essential to the carrying out of the public purposes for which it was established, or property to which the lien has attached before it became impressed with a public use, or the property of a corporation which is a private corporation and not a public or quasi-public one; and under the provisions of some constitutions or statutes a lien may attach to the property of a telephone, railroad, or waterworks company.' "

See also Buncombe County Commissioners v. Tommey, 115 U.S. 122, 5 S.Ct. 626, 29 L.Ed. 308; Id., 115 U.S. 122, 5 S.Ct. 1186, 29 L.Ed. 305, and McNeal Pipe & Foundry Co. v. Bullock et al., C.C.Ala., 1889, 38 F. 565.

### Doctrine of Appurtenance

It is also argued by appellants that the same result is legally arrived at upon the assumption that the waters furnished are appurtenant to the lands of appellants. Great difficulty is encountered in pursuing this theory.

Since the parties resisting the foreclosure under execution inter alia base their cases upon the assumption that the properties of the Reservoir Co. are appurtenant to the land within the Bynum District, we must check the correctness of such assumption by applying the Montana law to the facts of the case. Appurtenance is defined in Smith v. Denniff, 24 Mont. 20, 60 P. 398, 399, 50 L.R.A. 737, 81 Am.St.Rep. 408, as follows: "Section 1078 of the Civil Code [Sec. 6671 R.C.M.1935] defines an 'appurtenance' as follows: 'A thing is deemed to be incidental or appurtenant to land when it is by right used with the land for its benefit, as in the case of a way, or water course, or of a passage for light, air, or heat from or across the land of another.' A 'water course from or across the land of another' is an easement, and by reference to section 1250 of the Civil Code [Sec. 6749 R.C.M.1935] *it is plain that in the contemplation of the Code an appurtenance to land is in any and every case an easement.*" (Emphasis supplied.)

The emphasized part of this quotation is not supported by the later cases. The cited case involved a waterway across the land of another. It is apparent that the appurtenance was an easement, but the statement that "in the contemplation of the Code an appurtenance to land is

in any and every case an easement" was not necessary to the decision. The Supreme Court of Montana did not follow this obiter statement in Yellowstone Valley Co. v. Associated Mortgage Investors, 88 Mont. 73, 290 P. 255, 258, 70 A.L.R. 1002. We quote from the opinion and supply emphasis: "Upon the facts shown there can be no question that the water rights represented by the shares of stock in the Big Ditch Company were appurtenant to the lands. The authorities sustain this position. The fact that the certificates of stock—evidences of ownership of an interest in corporate property —are personal property, does not militate against this statement. *Personal property can become an appurtenance to land without attachment or annexation.* Section 6667, Rev.Codes, 1921, provides that real or immovable property consists of: (1) Land; (2) that which is affixed to land; (3) that which is incidental or appurtenant to land. For instance, we find that mining tools are appurtenant to mines. Section 6670, Rev.Codes 1921." (Emphasis supplied.)

And the court quote as follows from In re Johnson's Estate, 64 Utah 114, 228 P. 748, 751: "If the water right is represented by shares of stock in a corporation, the plain implication is that it may be transferred by a transfer of the certificate of stock, in the ordinary manner, as personal property. But that does not necessarily mean that water rights thus represented may not be an appurtenance to the land upon which the water is used, and pass as such with a conveyance of the land."

And again at page 258 of 290 P. the court say: "We do not overlook the point that whether a water right evidenced by shares of stock is appurtenant to the land upon which the water is used is a question of fact. But, upon the conceded facts, that question does not trouble us: clearly, the water is appurtenant to the land."

Clearly, then, all appurtenances need not be easements. If it were conceded that the stock of the Reservoir Co. were appurtenant to the land, it still need not be an easement which would give equitable title to the Bynum District as claimed.

It is well established law that all easements must of necessity be real property of a type, yet it is equally well established in Montana that the stock certif-

icates of a corporation are personal property. Verwolf v. Low Line Irr. Co., 70 Mont. 570, 227 P. 68, where the court state on page 578 of the Montana Report on page 71 of 227 P.: "A water right— a right to the use of water—while it partakes of the nature of real estate (Middle Creek Ditch Co. v. Henry, 15 Mont. 558, 39 P. 1054), is not land in any sense, and, when considered alone and for the purpose of taxation, is personal property. Helena Water Works Co. v. Settles, 37 Mont. 237, 95 P. 838 [Maclay v. Missoula Irr. Dist., 90 Mont. 344, 3 P.2d 286, and Smith v. Denniff, 24 Mont. 20, 60 P. 398, 50 L.R.A. 737, 81 Am.St.Rep. 408]."

■ The shares of stock of the Reservoir Co. held by appellants are but indicia of the contract for the percentage of the Reservoir Co. water which appellants have a right to receive and which in proper circumstances may become appurtenant to the land upon which the water is used. This right to receive a percentage of the water may be appurtenant to the land the water serves, but the facilities used in transporting the water to the place of delivery is not appurtenant to the land. It is the contract right evidenced by the stock certificates which may become appurtenant, and not the water or the facilities used to transport the water. This is borne out by the case of Hyink v. Low Line Irr. Co., 62 Mont. 401, 205 P. 236, for there the court was presented with a suit ex contractu for damages sustained by a stockholder in a like corporation, and the court say on page 239 of the Pacific Reporter: "* * a stockholder of an incorporated mutual irrigation company can maintain an action against the corporation for damages because of its failure to deliver water to him."

This expression was preceded by a statement citing 38 Cyc. 84 to the effect that if the stockholders had an interest in the property of the company in relation to their stock holdings, they would be tenants in common, and a "tenant in common cannot be charged with a liability to a cotenant for damages suffered by the latter through no fault of his". The exact question as to the interest of the stockholders in this company was before the court in the case of Brady Irr. Co. v. Teton County, 107 Mont. 330, 85 P.2d 350, where the court said at page 351 of the Pacific Reporter: "The

owners of the stock in the Teton Cooperative Reservoir Company do not own the equitable title to the property of that corporation, but their relation to it is one of contract. Hyink v. Low Line Irrigation Co., 62 Mont. 401, 205 P. 236; Dyk v. Buell Land Co., 70 Mont. 557, 227 P. 71. These contracts give to the stockholder the right to receive, through the irrigation facilities of the Teton Company, his pro rata share of the water stored. The shareholder in the plaintiff company likewise has a contractual right to his pro rata share of the water received by that company. These rights, when used on certain lands, *become appurtenant to such lands.*" (Emphasis supplied.)

While the courts roughly describe these stock certificates as "Water-rights", this term is misleading. The true concept of the share-contract is not that the shareholder has title to a given percentage of the water stored by the company, but rather that the company contracts to deliver from its supply and through its properties, the given percent of its waters. Such contract right to the water is to "receive" the water and not to "take" the water, for to construe it otherwise would create an easement in the facilities and make the stockholders tenants in common of the water stored by virtue of their right to "take" the percentage of water, and this is contrary to the settled law as above stated. The case of Hyink v. Low Line Irr. Co., supra, page 406 of 62 Mont., page 238 of 205 P., states this construction by saying: "It is admitted that the defendant was the owner, and engaged in the operation, of a certain canal, or irrigation system, organized for the purpose of diverting waters from their natural channel and *supplying* the same to the stockholders of the defendant for their mutual benefit, in proportion to their respective shares therein. This being a fact, the relation between the defendant and its stockholders is one of contract. The members purchased their stock—their interest in the corporate body —for certain express purposes, namely, the *supplying* of water to them in proportion to their respective shares, and the defendant corporation undertook to faithfully carry out these purposes."

The case of Brady Irr. Co. v. Teton County et al., supra, which is strongly relied upon to establish the claimed appurtenance and equitable interest in the properties of the Reservoir Co. can hardly be

considered as authority for that point. Forced as the conclusions may seem to be, that case on its face is contrary to such contention. It arrives at the legal conclusion that to tax the facilities of a corporation which had no value except in relation to the land which its facilities served, would be taxing the same property twice where the land served had been taxed at its value as increased by the use of the water. This reasoning is not that the facilities are without value, but that their value had already been taxed by taxing the increased value of the irrigated land as distinguished from the land without the supply of water. This theory would seem to assume that all of the Reservoir Co. property is necessary to the supply of water to Bynum District, else Bynum District property would not be assessed for all of the properties of Reservoir Co. By this theory the relief from taxation of properties of the Reservoir Co. is accomplished without doing violence to the doctrine of Hyink v. Low Line Irrigation Co., supra, and Dyk v. Buell Land Co., supra. It is therefore necessary for us to hold that the statutory and decision law of Montana does not view the stock ownership in the Reservoir Co. by Bynum District as giving Bynum District a property interest in the properties of the Reservoir Co. which will justify exemption of the company as being owned in fact by a governmental instrumentality. Since Brady Co. claims a like equitable interest in the properties of Reservoir Co., the same conclusion follows as to it.

### Montana Exemption Statutes

But, it is argued, notwithstanding that the Reservoir Co. performs a public service or for any other reason, the judgment lien nevertheless can be enforced in this case as against Reservoir Co. property because of the statutory laws of Montana.

Section 10703 Revised Codes of Montana (1935) provides: "In this state there is no common law in any case where the law is declared by the code or the statute; but where not so declared, if the same is applicable and of a general nature, and not in conflict with the code or other statutes, the common law shall be the law and rule of decision."

The only exemption statute claimed as applicable is Subd. 10 of § 9428, R.C.M. (1935). We shall set the related portion of this section out in full, but before doing so, we shall advert to the striking fact that the only punctuation marks used in

the quoted statute are commas, notwithstanding the patent fact that the only way all of the quoted part of the section can be given any meaning is by dividing it into two paragraphs. The first paragraph refers only to property owned or used by a county and the second paragraph refers only to property owned or put to public use through the agency of a city or town. In order to clarify the statute we divide it by leaving a space between the references to counties in the first part and to cities and towns in the second part. The punctuation is not disturbed.

The statute provides that the following are exempt:

"All courthouses, jails, public offices, and buildings, lots, grounds, and personal property, the fixtures, furniture, books, papers, and appurtenances belonging and pertaining to the courthouse, jail, and public offices belonging to any county of this state,

[Spaced by us for clarity.]

"and all cemeteries, public squares, parks, and places, public buildings, town halls, public markets, buildings for the use of fire departments and military organizations, and the lots and grounds thereto belonging and appertaining, owned or held by any town or incorporated city, or dedicated by such city or town to health, ornament, or public use, or for the use of any fire or military company organized under the laws of the state."

No state property or the property of any state agency whatever is referred to or included in the broadest reading of this section.

■ To argue that the state actually intended to exempt property used by the counties and cities and towns from foreclosure of liens and to permit foreclosure upon property belonging to the state or used by the sovereign authority of the state for public purposes would be extending the meaning of § 10703, Rev.Codes, supra, far beyond any possible remedial purpose sought to be effected by its enactment. In view of the extraordinary effect such a construction would have upon the powers of the state to protect its own property and activities, we can but arrive at the conclusion that no such construction was ever intended and that the legislature was laboring under some misapprehension that the sovereign power referred to herein and which by implication is reaffirmed by §

10703, R.C.M., did not extend to counties and cities and towns.

■ In the construction of the quoted statute defining the application of the common law together with the quoted exemption statute, we hold that the exemption statute does not act to declare the law as to foreclosure of liens upon the property involved in this case, and did not intend to change the rule as expressed in Northern Pac. R. R. v. Shimmell, 6 Mont. 161, 9 P. 889.

■ If it is contended that the subject of exemptions is covered by statute and that therefore under the doctrine of inclusio unius est exclusio alterius there are no other exemptions, then we reply that such contention extends the maxim far beyond its legitimate effect. Legal maxims are but the ripening of sound reasoning into precise expressions. They are not laws themselves but time tried thumb rules useful within reasonable limits. They are never applicable where the result of their application would manifestly lead to an absurdity.

The judgments of dismissal will be reversed and the cause will be remanded to the District Court for such further action as may be deemed proper. It will be noticed that the reversal of the judgment is based upon the public character of the service the Reservoir Co. performs to the land in the Bynum District. The facts as revealed by the pleadings as they now stand do not clearly make the supplying of water to the Brady Co. a public service, as the relation of the stockholders of the Brady Co. seems to be strictly and only one of contract with the Reservoir Co. It may be that the facts justify amendments which would place Brady Co. in such a category. We quote from Stratton v. R. R. Comm., supra [186 Cal. 119, 198 P. 1053], "Where a company is performing a service for a number of people of a certain class, and obligates itself to serve those who come within that class, as is the case here, it is not always easy to determine whether the service is rendered as service to a limited public and therefore a public service, although the class served is but a limited one, or is merely an aggregate of purely private services rendered to each of a number of persons."

Should the pleadings remain unchanged it will devolve upon the chancelor to con-

sider whether or not any relief can be given the judgment creditor without interference with the public service furnished the landowners in the Bynum District.

The cause is remanded to the District Court for such action as may seem proper consistent with this opinion.

HANEY, Circuit Judge (dissenting).

The judgment rendered on the promissory note in the state court was a lien "upon all real property of the judgment debtor not exempt from execution in the county" where it was rendered. Rev.Codes of Mont., 1935, § 9410. By § 9424, all "goods, chattels, moneys, and other property, both real and personal, or any interest therein of the judgment debtor, not exempt by law * * * are liable to execution". The object of the instant suit is to obtain a decree that the state court judgment is not a lien on the real property in question, and that neither the real property nor the personalty is subject to levy on execution. Under the above statutes, the judgment is a lien on the real property, and both the realty and personalty are subject to execution, unless "exempt" therefrom.

Certain exemptions are set forth in the statutes. See § 9427 et seq. It is not contended that the property here in question comes within the terms of any of those statutes. It is contended that the property in question is exempt from execution under general principles of law, wholly independent of statute. While it may be under common-law that property held for public uses is not subject to levy and sale under execution (23 C.J. 355 § 105), it first must be determined whether Montana recognizes any exemptions except those declared by statute. I believe it must be held that only the exemptions permitted in Montana are those declared by statute, because Rev.Codes of Mont., 1935, § 10703 provides: "In this state there is no common law in any case where the law is declared by the code or the statute; but where not so declared, if the same is applicable and of a general nature, and not in conflict with the code or other statutes, the common law shall be the law and rule of decision."

It is obvious that since the law of exemptions is declared by code, the common-law cannot be applicable. Compare State v. District Court, 69 Mont. 29, 220 P. 88.

Whiteside v. School Dist. No. 5, 20 Mont. 44, 49 P. 445, is not contrary, because a schoolhouse was held to be within the statute exempting public buildings. Likewise, Northern Pac. R. Co. v. Shimmell, 6 Mont. 161, 9 P. 889, is not applicable because it was decided prior to the enactment of § 10703.

It is further contended that the water-rights are appurtenant to the lands irrigated and are not owned by the judgment debtor, and therefore are not subject to execution. I agree with the treatment of that point by the majority opinion.

I think the decree should be affirmed.